[Cite as *Wall-Meiring v. Gibson*, 2023-Ohio-664.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Sylvia Wall-Meiring

     Appellant

v.

Kim Gibson, Individually and
as Executor of the Last Will and
Testament of Nancy Meiring
and as Trustee of the Trust of
Nancy Meiring, et al.

     Appellee

Court of Appeals No.  L-22-1083

Trial Court No.  CI0202003091


**DECISION AND JUDGMENT**

Decided:  March 3, 2023

* * * * *

Braden A. Blumenstiel, for appellant.

Jeffrey M. Kerscher, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** This is an appeal filed by appellant, Sylvia Wall-Meiring, from the February

23, 2021 and January 20, 2022 judgments of the Lucas County Court of Common Pleas.

For the reasons that follow, we affirm the judgments.

**{¶ 2}** Appellant sets forth three assignments of error:

1. The trial court erred in ruling defendant-appellee did not wrongfully convert assets or intentionally interfere with the expectancy of inheritance of appellant and the other trust beneficiaries through acts of self-dealing, fraud, dress, [sic] and/or undue influence.

2. The trial court erred in ruling defendant did not breach any of her fiduciary duties to appellant and the other trust beneficiaries.

3. The trial court erred in ruling defendant sufficiently rebutted the presumption of undue influence that applies in this case due to the fiduciary/confidential relationship appellee had with decedent when the challenged transfers of assets occurred.

### Background

{¶ 3} In 1969, Nancy and Robert Meiring married.[1] Prior to their marriage, Nancy had three children and Robert had three children. Nancy and Robert had a biological child together, thus the family ("Meiring family") consisted of seven children. Nancy and Robert never considered any of the children as step-children or children, they were all just considered children. Sylvia is one of those children.

{¶ 4} Nancy and Robert, during their marriage, operated a real estate company in which they managed numerous Toledo, Ohio rental properties they had accumulated.

---

[1]Since some of the parties and individuals share the same last name, we will refer to the parties by their first names only.

Nancy and Robert also owned a home in Fulton County, Ohio. Robert passed away in 2008, and Nancy inherited all of the rental properties and the home.

{¶ 5} On July 16, 2013, Nancy executed a will and created a living trust ("Trust"), naming herself as trustee. Sylvia, the other children in the Meiring family and their descendants were beneficiaries of the Trust, as was a church. Nancy also executed a durable limited power of attorney, appointing daughter, Kim Gibson, attorney-in-fact.

{¶ 6} In October 2013, Nancy transferred the legal titles of the rental properties and legal title of the home to the Trust.

{¶ 7} On March 20, 2014, R&N Rentals, LLC ("Rentals") was created and was co-owned equally by the Trust and Kim. Thus, the assets of the Trust were made assets of Rentals. That same day, an operating agreement by and among Rentals, the Trust and Kim became effective, and provided that the Trust and Kim were the two members of Rentals, and the Trust and Kim were each entitled to 50% of the profits of Rentals.

{¶ 8} Nancy passed away on January 9, 2017. Kim became the successor trustee of the Trust, as provided in the Trust.

{¶ 9} On April 30, 2017, Sylvia, as a beneficiary, signed an Approval of Sale document, acknowledging that she was notified of the plan to sell the home to another beneficiary ("buyer") for $262,500, which would initially be paid by a mortgage note from the Trust, and after the buyer received her inheritance, the buyer would pay off the mortgage to the Trust. The document further provided "I hereby approve of this sale and distribution process." Seven other beneficiaries each signed an Approval of Sale

3.

document.  Thereafter, a mortgage from the Trust to the buyer for the home was given for $105,000.

{¶ 10} On July 23, 2018, R&N Sales, LLC ("Sales") was created to hold properties (previously owned by Rentals) equal to the Trust's 50% stake.  Kim retained ownership of Rentals, and has been the sole owner of Rentals since 50% of the properties were distributed to Sales.

{¶ 11} On August 1, 2018, an operating agreement of Sales became effective by and among the members, who are the beneficiaries of the Trust, except Kim who gave up her interest.  The Sales' operating agreement provided that all of the members had signed it and agreed to be obligated by its terms.[2]  Kim was designated the initial manager of Sales.

{¶ 12} On January 9, 2019, Sylvia filed her complaint against Kim, Rentals and others, then dismissed her claims, without prejudice, and refiled her complaint on September 21, 2020.  In the refiled complaint, Sylvia set forth six causes of action:  in the first cause of action, she sought an accounting; in the second cause of action, she alleged breach of fiduciary duties against Kim; in the third cause of action, Sylvia alleged common law accounts; in the fourth cause of action, Sylvia alleged conversion against Kim; in the fifth cause of action, Sylvia sought an injunction; and in the sixth cause of

---

[2] The Sales' operating agreement in the record is only signed by Kim, as manager of Rentals.

4.

action, Sylvia alleged intentional interference with expectation of inheritance against Kim.

{¶ 13} On November 13, 2020, Kim and Rentals filed a motion for partial summary judgment as to Sylvia's second, fourth and sixth causes of action. Kim and Rentals subsequently withdrew their motion as to the second cause of action. On February 23, 2021, the trial court granted the motion as to the fourth and sixth causes of action.

{¶ 14} On August 24, 2021, Kim filed a motion for partial summary judgment on Sylvia's second and fifth causes of action. On January 20, 2022, the trial court granted the motion, and dismissed the second and fifth causes of action with prejudice.

{¶ 15} On March 18, 2022, Sylvia dismissed her remaining claims. Thereafter, Sylvia appealed the trial court's judgments.

## First Assignment of Error

{¶ 16} Sylvia argues she presented evidence to the trial court that Kim unduly influenced Nancy and wrongfully converted Nancy's assets for Kim's own benefit, which interfered with Sylvia's expectation of inheritance.

{¶ 17} Sylvia's arguments concern the fourth and sixth causes of action alleged in her complaint, which were the subject of Kim and Rentals' first motion for partial summary judgment. As such, we will review those causes of action, and undertake an examination of the first motion for partial summary judgment.

5.

**Complaint**

{¶ 18} In her fourth cause of action, Sylvia alleged her "ownership or right to possession of [T]rust assets was diminished as a result of [Kim's] wrongful conversion of Trust assets for her personal benefit by converting Trust assets into assets held by [Rentals] to which [Kim] was one of two members who is allegedly entitled to 50% of the income from the [Rentals'] assets." Sylvia further alleged in her complaint that Kim, in violation of her fiduciary duties, played an integral role in converting the Trust assets into assets of Rentals, which constitutes self-dealing. Sylvia also alleged the conversion of the Trust assets into assets of Rentals and/or the creation of Rentals was done at a time that Nancy was not of sound mind and memory, and/or was procured through undue influence, fraud, duress, forgery, mistake, coercion and/or other wrongful acts or omissions by Kim.

{¶ 19} In the sixth cause of action, Sylvia alleged Kim intentionally interfered with Sylvia's expectation of inheritance by subjecting Nancy to duress, fraud, and/or undue influence to convert Trust assets into assets held by Rentals.

**Kim and Rentals' First Motion for Partial Summary Judgment**

{¶ 20} Kim and Rentals argued the fourth and sixth causes of action were dependent on the allegation in the complaint that "* * * the conversion of the Trust assets into assets of [Rentals] and/or the creation of [Rentals'] Operating Agreement was done at a time [Nancy] was not of sound mind and memory and/or was procured as a result of undue influence, fraud, duress, forgery, mistake, coercion, and/or other wrongful acts

6.

and/or omissions by * * * Kim, as a result of which the conversion of assets from the Trust to [Rentals] and/or the creation of [Rentals] was not [Nancy's] free and voluntary act and, therefore, are invalid, null and void."

{¶ 21} Kim and Rentals offered the affidavit of attorney Timothy Alley, in which he averred, inter alia: he was Nancy's attorney and at her direction, he drafted and created her estate planning documents, including her will and Trust; at Nancy's direction, he drafted the operating agreement for Rentals and the deed work to transfer the Trust assets into Rentals; he observed Nancy freely and voluntarily execute the operating agreement for Rentals and sign the deeds; Nancy appeared in all respects to be of sound mind and memory; Nancy did not appear to be acting under fraud, duress, coercion or undue influence; had Nancy appeared to be not of sound mind or subject to undue influence, fraud, duress or coercion at the signing of the operating agreement for Rentals and deeds, he would not have advised her to sign the documents; Nancy was strong-willed and independent; and he was not concerned Nancy was not acting of her own free will.

{¶ 22} Sylvia countered that for years, Nancy and Robert had a real estate company through which they managed about 40 rental units. Sylvia contended that after Robert passed away in 2008, Nancy became distraught and had difficulty managing her own affairs, and Kim became more involved and started handling many aspects of Nancy's life. Sylvia argued on July 16, 2013, Kim became Nancy's power of attorney, which created a confidential/fiduciary relationship between Kim and Nancy which results in a presumption of undue influence for any transfers that benefit Kim.

7.

**{¶ 23}** Sylvia noted on May 29, 2014, a subscription for membership interests in Rentals was signed by Kim, but was not signed by Nancy, and on that same day, certificates assigning 50% of the ownership units of Rentals to Kim and the other 50% to the Trust was signed by Kim, and not signed by Nancy.

**{¶ 24}** Sylvia asserted Nancy's health deteriorated during the last few years of her life, and Nancy was forgetful, disoriented and had difficulty concentrating. Sylvia argued that for the last two years of Nancy's life, Kim exerted control over Nancy and her assets. For example, Sylvia claimed when she asked Nancy about Sylvia's daughter renting one of Nancy's houses, Nancy said Sylvia would have to check with Kim. Sylvia submitted that during the last few years of Nancy's life, Kim put Nancy on a budget and would only allow Nancy to spend a certain amount of money. In support of her position, Sylvia offered several documents, including three affidavits.

**{¶ 25}** In reply, Kim and Rentals observed that Sylvia argued the mere fact that Kim was the power of attorney for Nancy established undue influence, but Sylvia did not cite a single instance in which Kim used the power of attorney. Kim and Rentals asserted Sylvia was unable to rebut attorney Alley's affidavit.

### Standard of Review – Motion for Summary Judgment

**{¶ 26}** We consider whether a trial court properly granted a motion for summary judgment on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R.

8.

56(C). A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact," show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.* "No evidence or stipulation may be considered except as stated in this rule." *Id.*

**{¶ 27}** Civ.R. 56(E) states:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

**{¶ 28}** "Thus, an affiant's statements must set forth facts admissible in evidence." *Tomlinson v. City of Cincinnati*, 4 Ohio St.3d 66, 67, 446 N.E.2d 454 (1983). "Where an affidavit containing opinions is made part of a motion for summary judgment, it is properly considered by a trial or reviewing court when it meets the requirements set forth in Civ.R. 56(E) and Evid.R. 701." *Id.* at paragraph one of the syllabus.

**{¶ 29}** "'Documents submitted in opposition to a motion for summary judgment which are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial.'" *Battaglia v. Conrail*, 6th Dist. Lucas No. L-08-1332, 2009-Ohio-

9.

5505, ¶ 42, quoting *Green v. B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228, 619 N.E.2d 497 (9th Dist.1993).

{¶ 30} The moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact exists. *Id.* at 293.

## Conversion

{¶ 31} "The essential elements of a conversion claim are (1) ownership or right to possession of the property at the time of conversion, (2) a wrongful act or disposition of that property right by the defendant, and (3) damages." *Hutchings v. Hutchings*, 2019-Ohio-5362, 150 N.E.3d 548, ¶ 23 (6th Dist.), citing *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 19.

## Intentional Interference with Expectation of Inheritance

{¶ 32} The elements of a claim of intentional interference with expectation of inheritance are: (1) the existence of an expectancy of inheritance by the plaintiff; (2) an intentional interference by a defendant with the expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence; (4) a reasonable certainty the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993).

10.

**Undue Influence/Fiduciary Relationship**

**{¶ 33}** "'Undue influence occurs when the wishes and judgment of the transferor are substituted by the wishes and judgment of another.'" (Citation omitted.) *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 36. "General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence." *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962).

**{¶ 34}** To establish undue influence, the challenging party must prove by clear and convincing evidence: (1) the testator was susceptible to undue influence; (2) another person had an opportunity to exert influence over the susceptible testator; (3) improper influence was exerted or attempted; and (4) a result showing the effect of that influence. *Id.* This same standard applies in establishing undue influence with respect to a trust. *See* R.C. 5804.06.

**{¶ 35}** Clear and convincing evidence requires proof which "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Since the person who can give the best evidence is deceased, most of the evidence of undue influence "will be circumstantial, leaving the factfinder to draw permissible inferences." *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 69 Ohio St.3d 98, 102, 630 N.E.2d 676 (1994).

11.

**{¶ 36}** Undue influence is presumed if the challenging party establishes that a fiduciary or confidential relationship existed between the decedent and a beneficiary. *See In re Estate of Kiefer*, 2017-Ohio-6997, 95 N.E.3d 687, ¶ 8 (2d.Dist.). "The holder of a power of attorney has a fiduciary relationship with [the] principal. Such a relationship is 'one in which special confidence and trust is reposed in the integrity and fidelity of another * * * by virtue of this special trust.'" *In re Scott*, 111 Ohio App.3d 273, 276, 675 N.E.2d 1350 (6th Dist.1996), quoting *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981).

**{¶ 37}** "Any transfer of property from a principal to his attorney-in-fact is viewed with some suspicion." *Bacon v. Donnet*, 9th Dist. Summit No. 21201, 2003-Ohio-1301, ¶ 30, citing *Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632, 584 N.E.2d 1297 (6th Dist.1989). What is more, "the existence of a relationship giving rise to undue influence does not depend on the use of a power of attorney." *Bayes v. Dornon*, 2015-Ohio-3053, 37 N.E.3d 181, ¶ 50 (2d Dist.). *See also Bernholtz v. Bernholtz*, 6th Dist. Fulton No. F-22-002, 2022-Ohio-4764, ¶ 48.

**{¶ 38}** The holder of a power of attorney may rebut the presumption of undue influence by showing, by a preponderance of the evidence, the transfer was free of undue influence or fraud, and the principal acted voluntarily and with a full understanding of her actions and consequences. *Fox v. Stockmaster*, 3d Dist. Seneca No. 13-01-34, 2002-Ohio-2824, ¶ 51, citing *In re Guardianship of Blumetti*, 11th Dist. Trumbull No. 92-T-4752, 1994 WL 45250, *3 (Jan. 14, 1994). A preponderance of the evidence means

12.

evidence which is more probable, more persuasive or of greater probative value. *See In re K.P.*, 6th Dist. Lucas No. L-18-1196, 2019-Ohio-2045, ¶ 59.

{¶ 39} Thus, the holder of a power of attorney has the initial burden of proving the validity of a transfer, while the challenging party retains the ultimate burden of proving undue influence by clear and convincing evidence. *MacEwen v. Jordan*, 1st Dist. Hamilton No. C-020431, 2003-Ohio-1547, ¶ 13. *See also Bernholtz* at ¶ 45.

**Analysis**

{¶ 40} Upon review, in her fourth and sixth causes of action, Sylvia alleged Kim played an integral role in converting Trust assets into assets held be Rentals, which benefitted Kim, as the conversion occurred when Nancy was not of sound mind and memory, and/or was procured through undue influence, fraud, duress, forgery, mistake, coercion.

{¶ 41} The record shows in 2013, Nancy created the Trust and appointed Kim as her attorney-in-fact. Thus, we find that Kim, as the holder of a power of attorney, was in a fiduciary relationship with Nancy. During this relationship, in 2014, Nancy formed Rentals, of which Kim had a 50% stake and the Trust had a 50% stake.

{¶ 42} The Rentals' operating agreement set forth, inter alia: the initial members of Rentals were the Trust and Kim; Kim was nominated as the initial manager of Rentals; as the manager, Kim had the authority to execute all filings relating to the operation and management of Rentals. The operating agreement was signed by Nancy, as trustee, and Kim, as manager. We therefore find Kim had the authority, pursuant to the Rentals'

13.

operating agreement, to sign the subscription for membership interests in Rentals, and certificates assigning 50% of the ownership units of Rentals to Kim and the other 50% to the Trust.

{¶ 43} Since Kim was in a fiduciary relationship with Nancy, undue influence is presumed. Therefore, we find Kim had the burden to show her conduct was free of undue influence, and Nancy voluntarily acted with full knowledge of the consequences of her actions by a preponderance of the evidence.

{¶ 44} Our de novo review of the record, construing the evidence in a light most favorable to Sylvia, reveals, and we find, that Kim presented the following evidence, in attorney Alley's affidavit: Nancy, who was strong-willed and independent, directed Alley to draft the documents creating the Trust, the operating agreement for Rentals and the deeds to transfer the Trust assets into Rentals; Alley observed Nancy freely and voluntarily execute the Rentals' operating agreement and sign the deeds; Nancy appeared in all respects to be of sound mind and memory; and Nancy did not appear to be acting under fraud, duress, coercion or undue influence.

{¶ 45} Also in the record were averments presented by Sylvia, in her affidavit and the affidavits of Robert Meiring, Jr., and Linda Kline, Nancy's daughter-in-law, including: Nancy became more distraught and was having a very difficult time managing things after her husband's death; during Nancy's life, she became disoriented periodically; over the last few years of her life, Nancy demonstrated difficulty concentrating; Kim was seen demeaning and threatening Nancy; in 2015 or 2016, Kim

14.

yelled at Nancy while at a restaurant; and over the last two years of her life, Nancy demonstrated forgetfulness.

{¶ 46} Upon review, we find the averments in the affidavits offered by Sylvia are not evidence that Kim exerted undue influence over Nancy when Nancy created Rentals or transferred Trust assets into assets held be Rentals, nor are they evidence that Nancy's creation of Rentals and transfer of Trust assets into assets held by Rentals was the result of fraud, duress, forgery, mistake or coercion. We further find that Sylvia did not submit any medical records or other properly authenticated documents to rebut the averments in Alley's affidavit.

{¶ 47} We therefore conclude that Kim satisfied her burden of establishing the creation of Rentals and the transfer of Trust assets into assets held be Rentals was accomplished when Nancy was of sound mind and memory, and was not the result of undue influence, fraud, duress, forgery, mistake or coercion. We further conclude Sylvia presented no evidence to meet her ultimate burden of proving that Nancy was unduly influenced by Kim with respect to the creation of Rentals and the transfer of Trust assets into assets held be Rentals. As such, we conclude the trial court did not err in granting summary judgment to Kim and Rentals on Sylvia's fourth and sixth causes of action. Accordingly, Sylvia's first assignment of error is not well-taken.

**Second Assignment of Error**

{¶ 48} Sylvia argues the trial court erred in its January 20, 2022 judgment when it ruled that Kim did not breach any of her fiduciary duties to Sylvia and the other beneficiaries, as the evidence demonstrates numerous breaches.

{¶ 49} Sylvia's arguments concern the second cause of action alleged in her complaint, which was the subject of Kim and Rentals' second motion for partial summary judgment. As such, we will review that cause of action, and undertake an examination of the second motion for partial summary judgment.

**Complaint**

{¶ 50} In her second cause of action, Sylvia alleged she was a beneficiary of the Trust, as defined in R.C. 5801.01, and in accordance with the statute and the terms of the Trust, Kim had a duty of loyalty and impartiality to the Trust beneficiaries, to avoid self-dealing. Sylvia further alleged Kim had a duty to take reasonable steps to take control of and to protect the Trust property, and to keep adequate records of the administration of the Trust and its assets. Sylvia alleged Kim breached the fiduciary duties by failing to properly account for Trust assets and/or by converting assets for her own benefit.

**Kim and Rentals' Second Motion for Partial Summary Judgment**

{¶ 51} Kim and Rentals argued the second cause of action should be dismissed because: Sylvia was barred from her claim regarding the sale of Nancy's home, as Sylvia consented to the transaction in writing, pursuant to R.C. 5810.09; Sylvia cannot produce evidence of bad faith or reckless indifference, under the Trust's exculpatory provision, as

16.

modified by R.C. 5810.08, or evidence of damages; and Sylvia conceded her breach of fiduciary duty claims do not relate to transfers of assets to Rentals by Nancy before Kim became trustee. Kim and Rentals also argued Sylvia's fifth cause of action for an injunction should be dismissed.[3]

{¶ 52} In support, Kim and Rentals offered a second affidavit of attorney Timothy Alley, in which he averred, inter alia: as Nancy's attorney and at her direction, he drafted and created the Trust which included an exculpatory provision in Section 13.07; Nancy's home was sold to Kim's daughter and son-in-law with a written Approval of Sale document signed by Sylvia and each of the other Trust beneficiaries; the note and mortgage were referenced in the Approval of Sale document; and the sale never involved a land contract. Attached to Alley's second affidavit were several documents, including the Approval of Sale document and the note and mortgage. The Approval of Sale document states:

> I, _____, have been notified of the plan to sell [Nancy's] home located at * * * to [J.H.]. The sale is to be for $262,500. This amount will be initially paid in the form of a Mortgage Note that will be issued from [J.H.] to the * * * Trust * * *. Upon receipt of an inheritance that is being paid to her, she will then pay off the mortgage to the Trust. These funds

---

[3]Sylvia has raised no argument on appeal regarding her fifth cause of action, thus we need not address this cause of action.

17.

will then be distributed as called for in the Trust. I hereby approve of this

sale and distribution process.

The note provides the amount of the loan is $105,000, the lender is Kim as trustee,

interest is charged at the yearly rate of 4% and the maturity date is June 1, 2047.

{¶ 53} In opposition, Sylvia conceded that she signed an Approval of Sale

document regarding the sale of Nancy's home, but "it was the understanding the sale

would result in full payment of the $262,500 at the time the sale was concluded." Sylvia

also argued Nancy owned multiple pieces of real estate, and after Nancy passed away,

Kim, as trustee, divided the pieces of real estate so Kim had the more valuable real estate

located in better areas of town, and the other beneficiaries were left with the less valuable

real estate. Sylvia asserted she asked Kim multiple times to get the properties officially

appraised, but Kim failed and refused to do so. Sylvia further submitted Kim, as trustee,

failed to properly care for and maintain the pieces of real estate allotted to Sylvia and the

other beneficiaries, so the properties are less valuable. Sylvia claimed Kim either failed

to rent or sell the property or Kim rented and sold pieces of property, but failed to make

payment to Sylvia and the other beneficiaries.

{¶ 54} In addition, Sylvia argued Kim failed to: keep her updated as to the assets

in which Sylvia and the other beneficiaries have an interest; produce any property tax

records for 2018, 2019 and 2020; and produce income and expense reports for all of the

properties of the Trust, Rentals and Sales. In support of her position, Sylvia submitted a

18.

second affidavit, and attached photographs and a copy of a note, and other documents including Kim and Rentals' answers to Sylvia's second set of interrogatories.

{¶ 55} In reply, Kim and Rentals argued Sylvia was drastically broadening the breach of fiduciary duties alleged in her second cause of action. Yet, Kim and Rentals asserted that Sylvia failed to cite to sufficient evidence establishing each element of her the breach of fiduciary duties claims. As to the element of damages, Kim and Rentals submitted Sylvia's affidavit is based on conclusory and speculative statements, without specific operative facts that Sylvia suffered damages caused by Kim.

{¶ 56} In support, Kim and Rentals cited to several cases including *DeMeo v. Provident Bank*, 8th Dist. Cuyahoga No. 89442, 2008-Ohio-2936, ¶ 61 ("[C]ompensatory damages must be shown with certainty and damages which are merely speculative will not give rise to recovery.").

**Law**

{¶ 57} To prove breach of fiduciary duty, the challenging party "must establish the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the breach." *Newcomer v. Natl. City Bank*, 2014-Ohio-3619, 19 N.E.3d 492, ¶ 9 (6th Dist.), citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988). The burden of proof for breach of fiduciary claims is clear and convincing evidence. *Newcomer* at ¶ 48.

{¶ 58} "The general rule for the recovery of compensatory damages is that injury and the resulting damage must be shown with certainty and not be left to conjecture and

19.

speculation." *Pietz v. Toledo Tr. Co.*, 63 Ohio App.3d 17, 22, 577 N.E.2d 1118 (6th Dist.1989). "Injury or damage is a necessary element of a cause of action for negligence, without which summary judgment can be granted." *Id.*

{¶ 59} R.C. 5810.08 states:

A term of a trust relieving a trustee of liability for breach of trust is

unenforceable to the extent that it relieves the trustee of liability for breach

of trust committed in bad faith or with reckless indifference to the purposes

of the trust or the interests of the beneficiaries * * *.

{¶ 60} "'[C]onduct is reckless if it creates risk substantially greater than that which is necessary to make his conduct negligent.'" (Citation omitted.) *Newcomer* at ¶ 62, 64. "[R]eckless indifference 'require[s] an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation or property of others.'" *Id.* "'Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances * * *. (2 Restatement of the Law 2d, Torts, Section 500 (1965), adopted.)'" *Id.* at ¶ 63, quoting *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus.

{¶ 61} R.C. 5810.09 provides:

A trustee is not liable to a beneficiary for breach of trust if the beneficiary *

* * consented to the conduct constituting the breach, released the trustee

from liability for the breach, or ratified the transaction constituting the

breach, unless the consent, release, or ratification of the beneficiary or representative was induced by improper conduct of the trustee or, at the time of the consent, release, or ratification, the beneficiary or representative did not know of the beneficiary's rights or of the material facts relating to the breach.

This section applies regardless of whether the conduct being consented to, released, or ratified constitutes one or more breaches of fiduciary duty, violates one or more provisions of the Revised Code, or is taken without required court approval.

**Trust Provisions**

{¶ 62} Section 13.07 of the Trust entitled "Limitations on Trustee Liability" reads: I recognize that some persons or institutions may be reluctant to serve as Trustee because of a concern about potential liability. Therefore, I direct that any individual or corporate fiduciary that serves as my Trustee will not incur any liability by reason of any error of judgment, mistake of law, or action or inaction of any kind in connection with the administration of any trust created under this trust, unless my Trustee's decision is shown by clear and convincing evidence to have been in bad faith. * * *

**{¶ 63}** Section 13.12 of the Trust entitled "Trustee Accounting" states in relevant part:

> After my death, my Trustee must provide an annual accounting to the Qualified Beneficiaries of any trust created under this trust unless waived by the Qualified Beneficiaries.

## Analysis

**{¶ 64}** Upon review, in her second cause of action, Sylvia alleged Kim had a duty of loyalty and impartiality to the beneficiaries, and a duty to avoid self-dealing, to take reasonable steps to control and protect Trust property and to keep adequate records regarding the Trust and its assets, and Kim breached her fiduciary duties by failing to properly account for Trust assets and/or by converting assets for her own benefit.

**{¶ 65}** The record shows in 2013, Nancy created the Trust and named Kim as her successive trustee. After Nancy's death in 2017, Kim was appointed trustee of the Trust. As trustee, we find that Kim had a duty, pursuant to the terms of the Trust and R.C. 5810.08, to not act in bad faith in connection with the administration of the Trust, and to not act in bad faith or with reckless indifference to the purposes of the Trust or interests of the beneficiaries. We further find that Sylvia had the burden to show, by clear and convincing evidence, that Kim breached her duty by acting in bad faith or with reckless indifference, and Sylvia was injured as a result of that breach.

**{¶ 66}** Our de novo review of the record, construing the evidence in a light most favorable to Sylvia, reveals the following, with respect to the sale of Nancy's home. Kim

22.

presented evidence, in attorney Alley's second affidavit, that the home was sold after a written Approval of Sale document was signed by Sylvia, which referenced a mortgage note and set forth the terms of sale and the distribution process of funds from the sale. Sylvia offered evidence, in her second affidavit in which she averred, inter alia: "Although I approved of the sale of the home, it was my understanding any mortgage obtained by the buyers would result in full and complete payment of the $262,500 cost of the home, which would result in me * * * receiving the full amount of [my] share immediately. Instead [Kim] entered into an agreement by which the buyers were to make monthly payments over a period of [30] years."

{¶ 67} Applying the relevant law, R.C. 5810.09, to the evidence presented, we find Kim is not liable to Sylvia for any claimed breach of trust regarding the sale of Nancy's home, since Sylvia consented to the sale and the distribution of funds from the sale. Sylvia did not allege or prove that her consent was induced by improper conduct of Kim, or, that at the time of her consent Sylvia did not know of her rights or of the material facts relating to the breach. Despite the averment in her affidavit, that she thought she would be receiving the full amount of her share from the sale of the home immediately, the Approval of Sale document signed by Sylvia clearly states otherwise. Had the Approval of Sale document not mentioned the buyer's receipt of an inheritance, then there may be evidence of Sylvia not knowing material facts relating to the claimed breach. However, the Approval of Sale document did not indicate Sylvia would be paid immediately. We therefore find Kim is not liable to Sylvia for any claimed breach of

23.

trust concerning the sale of Nancy's home, as Sylvia consented to the sale and the distribution of funds.

{¶ 68} With respect to Sylvia's allegations that Kim breached her fiduciary duties by failing to properly account for Trust assets and/or by converting assets for her own benefit, our de novo review of the record, construing the evidence properly before the court, in a light most favorable to Sylvia and in accordance with the terms of the Trust and R.C. 5810.08, reveals Sylvia did not meet her burden of establishing that Kim acted in bad faith in connection with the administration of the Trust, or that Kim acted in bad faith or with reckless indifference to the purposes of the Trust or interests of the beneficiaries.

{¶ 69} The record includes many arguments by Sylvia, without proper evidentiary support, that Kim breached her duties to the beneficiaries. For instance, in Sylvia's September 22, 2021 affidavit she averred, inter alia: "[Kim] unilaterally decided to divide the real estate properties once owned by my mother in a manner that benefitted her to the detriment of myself[.] * * * Not only did [Kim] keep the more valuable property for herself after she became acting trustee, she regularly refused to properly care for and maintain the property allotted to me * * *. Attached hereto as Exhibit A are photographs of various properties Kim allotted to me * * * [which] show the state of disrepair associated with these properties * * *. As a direct and proximate result of [Kim]'s failure to properly maintain and repair these properties, they have lost value * * *."

24.

{¶ 70} Evid.R. 901(A) provides "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." With photographs, a witness with personal knowledge of the subject may authenticate the photos by testifying that the photographs fairly and accurately depict the subject at the time they were taken. *State v. Hannah*, 54 Ohio St.2d 84, 88, 374 N.E.2d 1359 (1978).

{¶ 71} Here, the copies of photos attached to Sylvia's affidavit included no suggestion of who took them, when they were taken, or what properties were depicted (other than Sylvia's contention that they were various properties Kim allotted to her.) We therefore find the photographs are not properly authenticated, and have no evidentiary value. In addition, Sylvia presented no evidence of the amount of her alleged damages, she merely offered unsubstantiated, conclusory statements in her affidavit that she was damaged.

{¶ 72} Other examples of arguments by Sylvia, without proper evidentiary support, are found in Sylvia's supplement to memorandum contra, filed November 15, 2021. Sylvia set forth "[t]he available evidence would easily permit a reasonable juror to conclude [Kim] is in breach of her fiduciary duties. In response to [Sylvia's] recent discovery requests, [Kim] supplied information regarding the 30 real estate properties at issue in this case. Ex. 1." The first exhibit is entitled "Real Estate Posse[s]sion Summary Created February 4, 2021."

25.

{¶ 73} Upon review, while Sylvia represented Kim supplied information regarding 30 properties, there are only 26 properties listed on the document. In addition, there is no calculation of the amount of alleged damages in the exhibit, nor is there an affidavit stating or explaining the amount of alleged damages. We find this is not sufficient evidence to permit a reasonable juror to conclude Kim breached her fiduciary duties.

{¶ 74} Sylvia also set forth "[a]ccording to [Kim], the sale of the properties * * * were sold for over $205,000. * * * However, none of that money has ever been distributed to the beneficiaries such as [Sylvia]. *See* Ex. 1 to [Sylvia's] * * * Memorandum * * * filed * * * on September 21, 2021. This is direct proof of [Kim's] breach of fiduciary duties to the trust beneficiaries." The exhibit to which Sylvia referred is her affidavit, where she averred "[t]o date, I have received no money from either the sale of one of these properties or rental income received as a result of these properties being rented to others * * * [and Kim] has failed to distribute any income from the sale and/or rental of the trust and/or R & N properties to the beneficiaries on a yearly basis."

{¶ 75} Upon review, Sylvia cited to no authority which mandated that Kim distribute money to Trust beneficiaries on a yearly basis, upon the sale of property, or when rental income is received. Further, we note the record includes evidence, in Kim and Rentals' answers to Sylvia's second set of interrogatories, that on "August 1, 2018[,] Sylvia * * * received $15,371.86, including funds from the sale of [Nancy's home] * * *. To date, no other monies have been disbursed to any owners of [Sales] or beneficiaries of [the Trust] due to this ongoing lawsuit." We therefore find the evidence offered by

26.

Sylvia is insufficient proof of Kim's breach of fiduciary duties to the Trust beneficiaries or evidence of Sylvia's damages.

{¶ 76} We conclude Sylvia did not offer evidence which could potentially raise an issue of material fact that Kim, as trustee, engaged in conduct amounting to bad faith or reckless indifference, or that such conduct caused damages to Sylvia. At best, some evidence submitted by Sylvia alleges errors in judgment by Kim or erroneous acts and omissions by Kim, such as not providing annual accountings to the Trust beneficiaries. However, those errors are immunized by Trust provision 13.07.

{¶ 77} We further conclude Sylvia did not satisfy her burden that Kim breached her duty by acting in bad faith or with reckless indifference, and Sylvia was injured as a result of that breach. Accordingly, Sylvia's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 78} Sylvia argues the trial court erred in ruling Kim sufficiently rebutted the presumption of undue influence due to the fiduciary relationship Kim had with Nancy when the challenged transfers of assets occurred. Sylvia asserts this error is reflected in the trial court's February 23, 2021 and January 22, 2022 judgments. Sylvia submits at all times the asset transfers which benefitted Kim occurred, Kim was the power of attorney for Nancy. Sylvia contends "[t]hrough various legal maneuvers after [Kim] became power of attorney in July 2013, the assets of Nancy Meiring went from Nancy personally owning them, to being property of Nancy's trust * * * to becoming the property of [Rentals] * * *. Furthermore, [Kim] unilaterally created [Sales] and transferred

27.

approximately half of the real estate to that company without the consent or knowledge of [Sylvia] * * *." Sylvia maintains due to the fiduciary relationship Kim had when these transfers of property occurred, Kim has the burden of proving those transfers were not done by Nancy under her own free will and without any undue influence being exerted, but Kim has failed to do so.

{¶ 79} Upon review, for the reasons set forth in our analyses under Sylvia's first and second assignments of error, we find Sylvia's third assignment of error not well-taken.

{¶ 80} On consideration whereof, we affirm the February 23, 2021 and January 20, 2022 judgments of the Lucas County Court of Common Pleas. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                     _____
                                                            JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.                    _____
CONCUR.                                           JUDGE

                                                      _____
                                                            JUDGE

---

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.