[Cite as *In re Trust of Hawkins v. Schwyn*, 2025-Ohio-2034.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In the Matter of: The Trust of Robin
Hawkins, Deceased

[Kathleen Hankins

    Appellant

      v.

Dennis M. Schwyn

    Appellee]

Court of Appeals No. L-24-1005

Trial Court No. 20230ADV0605

**DECISION AND JUDGMENT**

Decided: June 6, 2025

\* \* \* \* \*

Laurie Watson, Esq., for appellant.

Milton Pommeranz, Esq., and Jessica L. Densic, for appellee.

\* \* \* \* \*

**ZMUDA, J.**

## I.    Introduction

{¶ 1} Appellant, Kathleen Hankins, appeals from the December 4, 2023 judgment of the Lucas County Court of Common Pleas, Probate Division, denying her Civ.R. 60(B) motion for relief from judgment. For the following reasons, we affirm the trial court's judgment.

## A.    Facts and Procedural Background

{¶ 2} This appeal arises from a dispute regarding a revocable trust ("Trust") decedent Robins Hawkins executed on February 14, 2019.[1] The relevant terms of the Trust identified appellant Kathleen Hankins, Hawkins' long-time romantic partner, and appellee Dennis Schwyn, Hawkins's longtime employee and business associate, as beneficiaries.[2] The Trust property included all of Hawkins's real and personal property. Upon Hawkins's death, appellant was to receive all of Hawkins's tangible personal property and a life estate in his 21-acre real property homestead. Appellee was to receive a portion of any remaining property following the death of Hawkins's Mother. On February 15, 2019, Hawkins executed a power of attorney granting appellee authority to make financial decisions on his behalf.

{¶ 3} Hawkins was diagnosed with acute myeloid leukemia in 2021, resulting in his hospitalization in December, 2021. That following Spring, on March 2, 2022, Hawkins executed an amendment to his Trust. The amendment expressly amended and restated the Trust "in its entirety." Under the amendment, appellant would receive only a life estate in Hawkins's real property rather than the property she was to receive under the Trust as originally written. All remaining Trust property would now be distributed to appellee upon Hawkins's death. During a recorded conference with his counsel, Hawkins

---

[1] Hawkins also executed his last will and testament that same day. Any proceedings related to that instrument are not part of this appeal.

[2] The trust beneficiaries also included several charitable organizations that were not part of the settlement agreement and are not parties to this appeal.

2.

stated that he wished to make this amendment because the beneficiaries of the original trust were "self-sufficient" and that appellee had been a trusted business partner who had worked with Hawkins since he was 16 years old.

{¶ 4} In December, 2022, Hawkins's condition worsened and he entered residential hospice care. On December 21, 2022, appellant arrived at the hospice facility with a justice of the peace and a marriage license, seeking to marry Hawkins. Hawkins was unaware that appellant had acquired the marriage license in his name and did not intend to marry appellant. Appellant and the justice of the peace were removed from the facility. The administrator at the facility, Ashley Brough, drafted an incident report describing appellant's conduct and submitted the report to the Ohio Department of Health. She also reported the incident to the Lucas County Sheriff's Department.[3] On December 28, 2022, Hawkins executed a second amendment to the Trust. This new amendment expressly stated that it was intended to alter and amend the Trust provision related to the distribution of Trust property upon Hawkins's death. The amendment named appellee the sole beneficiary of all trust assets, eliminating all property distributions to appellant including her life estate in certain real property owned by the Trust. Hawkins requested this second amendment from his counsel during a recorded phone conference. During that call, Hawkins stated that he desired to make this amendment due to appellant's attempt to marry him while in hospice care.

---

[3] The record does not indicate the result of any investigations that arose from these reports.

3.

{¶ 5} Hawkins passed away on January 4, 2023. A short time later, appellant contacted appellee regarding the amended terms of the Trust. The parties entered into negotiations to resolve appellant's objections to having been excluded as a beneficiary. According to appellee, the parties entered into a settlement agreement but appellant refused to sign a document memorializing the agreement. Instead, on March 17, 2023, appellant filed a complaint in the Lucas County Court of Common Pleas, Probate Division, seeking to set aside both amendments to the Trust. Appellant alleged that the amendments were the result of appellee's undue influence on Hawkins and that Hawkins was not competent at the time the amendments were made. On March 24, 2023, the parties reached a settlement to resolve appellant's claims. Pursuant to the settlement agreement, Appellant would receive $50,000, a vehicle, three horses with supplies related to their care, and all personal property contained in a Quonset hut located on Trust property. Appellant was also given a four-month period to remain on the property without paying rent.

{¶ 6} The settlement agreement was read into the record at a March 27, 2023 hearing. Appellant's counsel drafted a written contract in accordance with the agreement. Both parties executed the written agreement in April, 2023.[4] At that time she signed the agreement, appellant received an initial cash payment of $15,000 of the agreed $50,000, the vehicle, and the horses and equipment. On June 6, 2023, the trial court issued a "consent judgment entry" referencing the parties' agreement and resolving the matter.

---

[4] Appellant signed the agreement on April 11, 2023. Appellee signed the agreement on April 14, 2023.

4.

On August 1, 2023, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B)—captioned "Plaintiff's Motion to Re-open Adversary Proceedings and Set Aside Settlement Agreement/Consent Entry." Appellant argued that appellee committed fraud by "engineer[ing] the execution of two amendments [to the Trust] benefitting himself" and forc[ing] her to sign the agreement under "duress" through threats and intimidation. Appellant also argued that appellee's alleged fraud constituted an "overreach" by obtaining more favorable settlement terms for himself and, as a result, there was no mutual assent to the settlement agreement. Appellee's opposition argued that appellant was not entitled to relief from judgment because she had no reasonable chance to succeed in her initial claims that Hawkins was not competent to execute the amendments or that appellee exercised undue influence on Hawkins to amend the Trust to his benefit.

{¶ 7} The trial court conducted a hearing on appellant's motion on October 12, 2023. Appellant was the sole witness called in support of her motion. Her testimony is summarized below:

### Testimony of Appellant

{¶ 8} At the time of the hearing, appellant had lived on property owned by Hawkins for more than 20 years. She and Hawkins had been in a romantic relationship for approximately 30 years prior to his passing. Near the beginning of her testimony, she identified three photographs of her and Hawkins with various other members of her family dating back to 1996.

{¶ 9} Appellant then described Hawkins's businesses. She testified that Hawkins was engaged in a business that built greenhouses and custom buildings. She participated

5.

in this work with him by attending trade shows and visiting buildings on-site. Her understanding of the business structure is that Hawkins performed all work related to sales while appellee worked on constructing the buildings once they were sold. Appellant noted that she was not employed by Hawkins, had no authority to represent the business in any of its dealings, and never reviewed any of the business' financial statements or similar documents.

{¶ 10} She then turned to Hawkins's illness in the latter stages of his life. After his cancer diagnosis in 2021, appellant was primarily responsible with transporting Hawkins to his appointments and treatment sessions. Hawkins entered hospice care in December, 2022 and died in January, 2023. Appellant was not involved in planning his funeral and only attended the visitation hours. She testified that she did not attend the funeral because she was informed that Hawkins's brother did not want her to attend. She also stated that appellee kept her from visiting Hawkins during the last few weeks of his life. Appellant believed that Hawkins had been cremated but testified that appellee would not tell her the location of his remains.

{¶ 11} Appellant next described her understanding of Hawkins's assets and the Trust agreements at issue in this case. She noted that she had been informed that Hawkins had executed the Trust shortly after his cancer diagnosis. She never had the opportunity to review the Trust or its amendments while Hawkins was alive. She also never reviewed the will Hawkins executed at the same time as the Trust. She testified that she engaged counsel shortly after Hawkins's death in order to determine her benefits under the Trust. She terminated her first attorney after he inadvertently sent her an email

6.

intended for appellee's counsel suggesting they resolve the matter quickly and, purportedly, without considering the terms she wished to be included in any settlement agreement. She testified that her new counsel never informed her of the value of Hawkins's estate before she signed the settlement agreement. She recalled that during a prior hearing, appellee testified that the entire value of the trust estate was approximately $3,000,000.

{¶ 12} As to her claim that appellee intimidated her after Hawkins's death, appellant testified that appellee ordered her not to retrieve mail from a mailbox on the property because he believed she was hiding mail sent to Hawkins. She stated that she complied with his demand because she believed that appellee would not allow her to see the horses if she continued taking the mail. She also claimed that at some unspecified time after Hawkins's death that appellee threatened her yelling "[y]ou give me [Hawkins's] stuff or you're going to get arrested." She later clarified that the "stuff" appellee sought included "guns and a vehicle." She also alleged that appellee would approach her in the area outside the horse barn in his vehicle and that she would feel "cornered" as she was standing in an open field. During another incident, appellant was working in the field and saw appellee approach other individuals that were helping her. She believed that appellee threatened them.

{¶ 13} On cross examination, appellant acknowledged that she applied for a marriage license in December, 2022. She testified that she applied for the marriage license "for" Hawkins because he was in residential hospice care at that time. She expressly stated that Hawkins was not incompetent to apply for a marriage license at that

7.

time despite being "very ill." She disputed, however, that he was competent to amend the Trust a short time later "because after that, he became more ill." She denied attempting to "force" Hawkins to marry her. Appellant also acknowledged that the Lucas County Sheriff's Department was called to the hospice facility the day she appeared with the marriage license, resulting in a report that identified Hawkins as the victim and appellant as the "suspect." She also agreed that Hawkins refused to marry her that day.

{¶ 14} Appellant was next presented with a copy of the settlement agreement. She confirmed that she had signed the agreement on April 11, 2023. She noted that her counsel had appeared at a hearing on March 27, 2023 and represented to the trial court that the matter had been resolved. She stated that she "was forced into" the settlement because appellee stated that it was his final offer of settlement and that it would be revoked if there was no response by a certain deadline. She stated that her counsel told her to sign the agreement. At the time she signed the agreement, appellant received a check for $15,000 and the title to the vehicle described in the settlement agreement. Appellant also agreed that the settlement agreement required her to move from property that was part of the Trust estate by July 31, 2023, but that she still lived on the property at the time of her testimony—October 31, 2023.

{¶ 15} Appellant again addressed her attempt to marry Hawkins while he was in hospice care on redirect examination. When asked what she would have gained financially had she been able to marry Hawkins, appellant stated that she "wouldn't be going through all of this right now." She also restated that prior to signing the settlement agreement, she was unaware of the value of the Trust estate. She concluded her

8.

testimony by denying that she attempted to marry Hawkins so that she would be entitled to half of his assets upon his death.

{¶ 16} Following appellant's testimony, appellee called two witnesses. Their testimony is summarized below:

### Testimony of John Balcerzak

{¶ 17} Appellant hired Mr. Balcerzak as counsel to represent her during the underlying litigation. He was appellant's second attorney after she terminated her prior counsel. He testified that during his representation of appellant that he reviewed the Trust and it was his understanding that only appellee and Hawkins's brother were beneficiaries of the Trust.

{¶ 18} At the time he was retained, appellee had initiated eviction proceedings to remove appellant from Hawkins's homestead after his passing. On March 7, 2023, contemporaneous with the complaint in this matter, Balcerzak filed a request for a temporary restraining order to stop the eviction. The parties appeared before the trial court on March 17, 2023. At that time, counsel for both parties represented to the trial court that a settlement had been reached and they read the terms of that agreement into the record. He noted that appellant was not at this hearing due to transportation issues but that she had granted him authority to enter into the settlement agreement. He also

9.

acknowledged that he had inadvertently sent an email expressing appellant's agreement to the terms of the settlement to appellant rather than opposing counsel.[5]

{¶ 19} Balcerzak next testified regarding the settlement agreement executed by the parties. He confirmed that he drafted the agreement and that appellant executed it at opposing counsel's office. At the time, appellant received a check for $15,000 and the keys to the vehicle she was to receive under the terms of the agreement. Balcerzak also agreed that he would not have advised appellant to sign the agreement if she had not agreed to its terms and that he did not believe that she was being threatened or was under duress as the time she executed the settlement agreement.

{¶ 20} On cross-examination, Balcerzak testified that the first amendment to the Trust occurred on March 22, 2022. He noted that in order to restore appellant's Trust benefits as originally written, the lawsuit filed on her behalf would have to show that Hawkins was not competent to execute either amendment that limited or revoked her benefits under the Trust. While recognizing that he would need to support such findings to succeed in the litigation, he noted that he did not conduct any discovery related to Hawkins's alleged incompetency after the complaint was filed. On redirect examination, Balcerzak confirmed that his correspondence with opposing counsel referenced that Hawkins's medical records had been voluntarily exchanged in lieu of formal discovery.

---

[5] Although not described in detail during Balcerzak's testimony, this email is also referenced in appellant's testimony as part of her argument that she was pressured into signing the settlement agreement.

10.

Finally, on recross examination, he testified that the records that were exchanged were incomplete.

## Testimony of Ashley Brough

{¶ 21} Ms. Brough is a licensed nursing home administrator. She was employed in this capacity on December 21, 2022, at a facility called Otterbein Monclova. She described her responsibilities as "oversight of all processes[,] including admissions." Hawkins was a resident of Brough's facility and in its hospice care at all times relevant to this appeal. She recalled that Hawkins had been diagnosed with "a form of leukemia." Hospice care is designed for patients who have a life expectancy of six months or less. Hawkins died at the facility on January 4, 2023.

{¶ 22} Brough next testified regarding Hawkins's mental state at the time of this incident. She identified an assessment call the Brief Interview for Mental Status ("BIMS") that was conducted upon his admission. The BIMS test can result in a score from 0-15 with 15 being the highest level of competency. Appellant scored a 15.

{¶ 23} Brough testified that she was familiar with appellant through Hawkins's time as a resident. She interacted briefly with appellant upon Hawkins's admission. Hawkins had previously designated appellant as his health care power of attorney. Brough testified that Hawkins later revoked that power of attorney as the result of an incident that occurred on December 21, 2022. On that date, a member of the staff reported to Brough that appellant had arrived at the facility with another individual and was attempting to have Hawkins sign then-unidentified legal documents. Brough initially suspected that appellant was attempting to get Hawkins to sign an application for a 11.

marriage license. Upon further investigation, she determined that appellant had already obtained a marriage license and was attempting to marry Hawkins. In a subsequent conversation with Hawkins, he denied having any role in obtaining the marriage license.

{¶ 24} As a nursing home administrator, Brough is obligated to report any suspicion of abuse, neglect, misappropriation, or mistreatment to the Ohio Department of Health. She filed an initial report based on her opinion that appellant was trying to take advantage of Hawkins through her attempt to marry him. The initial incident report comported with her testimony regarding appellant's attempt to marry Hawkins.

{¶ 25} The incident report also included a statement from the nurse that informed Brough of the incident and a supplemental report, submitted on December 22, 2022, indicating that Brough had contacted law enforcement regarding the incident. She submitted a final report to the Ohio Department of Health on December 27, 2022. She stated that this final report must be filed within 5 days of the initial report as required by law. This report described her investigation of the incident which included conversations with Hawkins and appellee. She reported that during her conversations with Hawkins he appeared "lucid, clear, and concise[.]" She also reported that Hawkins was "very, very clear upon admission and during the course of the investigation that he did not wish to get married to [appellant] at any point" because he had an ex-wife that he believed had married him "for his money." The final report also noted that appellant had been told she could not return to the property and that if she did, she would be considered a trespasser and law enforcement would be called. Brough confirmed that appellant did not return to the facility.

12.

{¶ 26} On cross-examination, Brough stated that she was not qualified to determine if Hawkins's mental state could have deteriorated between his admission and his death approximately two weeks later. She confirmed that a portion of her report to the Ohio Department of Health identified Hawkins's cognition as "variable based on [Hawkins's] responses to questions." She then described the facility's internal process for filing a report. She begins by collecting as much information as quickly as possible to file the initial report. Then, she conducts further investigation for the final report that must be filed no more than 5 days later. Brough also described the BIMS test and that it included short-term memory recall questions and questions regarding whether the subject could identify the current date and time. The test does not ask the subject to recall any family details. Brough also confirmed that Hawkins expressed his desire to have appellant removed as his health care power of attorney directly to Brough. Lastly, she confirmed that she had never received any requests for Hawkins's medical records during the underlying proceedings.

## Trial court judgment

{¶ 27} At the conclusion of Brough's testimony, both parties provided the court with a brief argument regarding the merits of appellant's motion. The trial court took the matter under advisement.

{¶ 28} On December 4, 2023, the trial court filed a judgment entry denying appellant's motion for relief from judgment. The trial court held that appellant's execution of the settlement agreement was not the result of fraud, duress, overreaching or

undue influence. The trial court further held that appellant had "very little chance" of success on the merits of her claims against appellee.

## B. Assignments of Error

{¶ 29} Appellant timely appealed and asserts the following error for our review:

1. The trial court erred by failing to analyze [appellant's] claims of fraud, misrepresentation, and misconduct of adverse party when ruling on [appellant's] motion to set aside a settlement agreement pursuant to Civ.R. 60(B)(3).

2. The trial court erred by denying [appellant's] motion to set aside settlement agreement pursuant to Civ.R. 60(B)(5).

## II. Law and Analysis

{¶ 30} Each of appellant's assigned errors seeks review of the trial court's denial of her motion for relief from judgment pursuant to Civ.R. 60(B)(3) and (5). Civ.R. 60(B) states, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party * * * or (5) any other reason justifying relief from judgment.

{¶ 31} To prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant "must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time[.]" *GTE Automatic Electric, Inc. v. Arc Industries, Inc.,* 47 Ohio St.2d 146, 150 (1976). We review a trial court's denial of a Civ.R. 60(B) motion for relief from judgment for an abuse of discretion. An abuse of discretion occurs when the trial court's

14.

attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1993).

{¶ 32} In her first assignment of error, appellant argues that the trial court erred by "failing to analyze" her fraud allegations as a basis for relief from judgment under Civ.R. 60(B)(3). In her second assignment of error, she argues that the trial court erred in denying her motion for relief from judgment under the "catch-all" provision in Civ.R. 60(B)(5). Each of appellant's assigned errors, then, argues that the trial court erred in finding that she had not satisfied the standard under Civ.R. 60(B)(3) and (5) to obtain relief from judgment. Because we find that appellant cannot satisfy the first element necessary to show that the trial court erred in denying her motion for relief from judgment under either Civ.R. 60(B)(3) or (5)—that is, that she has a meritorious claim to present if the relief had been granted—our analysis is dispositive of both assigned errors and we address them jointly.

## A. Appellant's claims before the trial court

{¶ 33} In her complaint, appellant alleged that Hawkins's amendments to the Trust were invalid because Hawkins was not competent to make the amendments and because appellee exercised undue influence on Hawkins to induce amendments to his benefit. To succeed in this appeal, appellant must show that the trial court abused its discretion in determining that her claims were not meritorious. We address those claims in turn.

### 1. Appellant's claim that Hawkins was not competent to amend the Trust lacked merit.

**{¶ 34}** To determine whether an individual is competent to amend a written instrument establishing beneficiaries of their estate upon their death, we must determine whether that individual has testamentary capacity. *See In re. Estate of Flowers,* 2017-Ohio-1310, ¶ 84 (6th Dist.) (holding that changing the beneficiary of a written instrument is similar to naming an heir in a will and, therefore, is only valid when the person changing the beneficiary has testamentary capacity). The test for determining whether an individual has testamentary capacity is:

> whether the person has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; Second, to comprehend generally the nature and extent of his property; Third, to hold in his mind the names and identify of those who have natural claims upon his bounty; and Fourth, to be able to appreciate his relation to members of his family.

*Id.* citing *Niemes v. Niemes,* 97 Ohio St. 145 (1917). The party challenging the individual's capacity to invalidate the amendments must show that the testator lacked capacity through clear and convincing evidence. *Id.*

**{¶ 35}** At the time the trial court ruled on appellant's motion for relief from judgment, appellant had submitted no evidence to support her allegation that Hawkins was not competent to make either amendment to the Trust. Her testimony focused on her unhappiness with the terms of the settlement agreement. The single reference to Hawkins's mental capacity was her testimony that Hawkins was competent to marry her on December 21, 2023, but was not competent to amend the Trust just seven days later on December 28, 2023. She attributed this expedited decline in Hawkins's competence to

16.

his health getting worse but offered no other evidence to support that allegation. She offered no testimony or evidence regarding Hawkins's competence at the time of the March 2, 2022 amendment to the Trust that left her with only a life estate in Hawkins's real property.

{¶ 36} In opposition to appellant's motion, appellee offered a video of Hawkins's conference with counsel regarding why he sought to make the March 2, 2022 amendment, and a recorded phone call between Hawkins and his counsel discussing the December 28, 2022 amendment. In the video, Hawkins explains that he wished to make the March 2, 2022 amendment because he believed that all of the originally-named beneficiaries were self-sufficient and did not need to receive an interest in the trust estate beyond the life estate granted to appellant. There is nothing in the video on which to base any contention that Hawkins did not understand his actions or the consequences of making the amendment.

{¶ 37} During the phone call discussing the December 28, 2022 amendment, Hawkins is able to answer his counsel's questions regarding why he wanted to amend the Trust. Hawkins expressly states that he was upset that appellant attempted to marry him while he was in hospice care and that he wanted to amend the Trust to remove her as a beneficiary entirely. Not only did Hawkins appear to understand his actions, he also acknowledged the consequences of those actions when he discussed with counsel that appellant was likely to challenge the amendment after his death.

17.

{¶ 38} Having reviewed the record, it is apparent that Hawkins understood the nature of the amendments to the Trust, understood the nature and extent of his property, knew the individuals, including appellant, that would have a claim under the Trust, and could appreciate his relationship with potential beneficiaries at the time he made both amendments to the Trust. Appellant offered no evidence, let alone clear and convincing evidence, to support her claim that Hawkins was not competent to make either amendment to the Trust. As a result, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable. *See Blakemore,* 5 Ohio St.3d 217. Therefore, we find that the trial court did not abuse its discretion when it determined that appellant did not have a meritorious claim that Hawkins was not competent to amend the Trust should it grant her requested relief under Civ.R. 60(B). *Id.*

### 2. Appellant's claim that appellee exercised undue influence to subvert Hawkin's wishes is without merit.

{¶ 39} The evidence in the record also shows that the trial court did not abuse its discretion when it determined that appellant could not succeed on her claim that appellee exercised undue influence on Hawkins by inducing favorable amendments to the Trust. "Undue influence occurs when the wishes and judgment of the transferor are substituted by the wishes of another." *Wall-Mearing v. Gibson,* 2023-Ohio-664, ¶ 33 (6th Dist.). Generally, a party alleging undue influence must show, through clear and convincing evidence, that "(1) the testator was susceptible to undue influence; (2) another person had the opportunity to exert influence over the susceptible testator; (3) improper influence was exerted or attempted; and (4) a result showing the effect of that influence." *Id.* at ¶

18.

35. However, "[u]ndue influence is presumed if the challenging party establishes that a fiduciary or confidential relationship existed between the decedent and a beneficiary." *Id.* at 36. The holder of a power of attorney has a fiduciary duty to the principal. *Id.* "The holder of a power of attorney may rebut the presumption of undue influence by showing, by a preponderance of the evidence, the transfer was free of undue influence or fraud, and the principal acted voluntarily with a full understanding of [their] actions and consequences." *Id.* at ¶ 38. "Thus, the holder of a power of attorney has the initial burden of proving the validity of a transfer, while the challenging party retains the ultimate burden of proving undue influence by clear and convincing evidence." *Id.* at ¶ 39.

{¶ 40} It is undisputed that appellee had a fiduciary duty to Hawkins as he held a financial power of attorney over Hawkins's estate at the time the amendments were made. It is further undisputed that the amendments to the Trust benefited appellee. As a result, had appellant's claim of undue influence gone to trial, it would have been presumed that the amendments were the result of undue influence and appellee would have been obligated to show that the amendments were valid. Appellant accurately recognizes this burden shift in her brief. Her sole argument that appellee could not satisfy his burden is that the amendments were "a substantial departure from the prior asset distribution plan" and not "truly the product of [Hawkins's] free will." She then summarily states that her claims are "clearly meritorious." Appellant's summary conclusion that appellee could not have satisfied this shifted burden and that the trial

19.

court abused its discretion by finding that her claim of undue influence was not meritorious is not supported by the record.

{¶ 41} As noted above, appellee provided recordings of conversations between Hawkins and his counsel that occurred just prior to each amendment to the Trust. During each conversation, Hawkins described the amendment he requested counsel make, the reason for that amendment, and the anticipated consequences of that amendment. Additionally, the trial court noted Brough's testimony in which she noted Hawkins's lucidity at the time of the December 28, 2022 amendment, and his anger with appellant for attempting to marry him while in hospice care, before concluding that appellant's claims had "very little chance of success[.]"

{¶ 42} Based on this evidence, we cannot say that the trial court's decision was unreasonable, arbitrary or unconscionable. *See Blakemore,* 5 Ohio St.3d 217. The trial court did not abuse its discretion in finding that appellant did not have a meritorious claim to present if she were granted the relief she sought. *Id.* Appellee presented evidence that would have satisfied his initial burden to show that the amendments were valid. Appellant offered no evidence to show that appellee exercised undue influence on Hawkins beyond a summary conclusion that he had done so. As a result, appellant has not shown that she had a meritorious claim necessary to obtain relief from judgment pursuant to Civ.R. (60)(B) on her undue influence claim.

{¶ 43} In sum, appellant has not shown that the trial court abused its discretion when it found that she could not succeed on her claims for relief and, therefore, cannot

20.

satisfy the first element of Civ.R. 60(B). As a result, we find appellant's first and second assignments of error not well-taken.

### III. Conclusion

{¶ 44} For these reasons, we find appellant's first and second assignments of error not well-taken and we affirm the December 4, 2023 judgment of the Lucas County Court of Common Pleas, Probate Division.

{¶ 45} Appellant is ordered to pay the costs of this appeal pursuant to App.R.24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See, also,* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | |
| | JUDGE |
| Gene A. Zmuda, J. | |
| | JUDGE |
| Charles E. Sulek, P.J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.