[Cite as *Sortino v. Calfee, Halter & Griswold, L.L.P.*, 2025-Ohio-1949.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

George Sortino

    Appellee

v.

Calfee, Halter & Griswold, LLP, et al.,

    Appellants

Court of Appeals No. {22}E-24-023

Trial Court No. 2019CV0019

**<u>DECISION AND JUDGMENT</u>**

Decided:  May 30, 2025

\* \* \* \* \*

Dennis E. Murray, Sr., Margaret M. Murray
and Donna J. Evans attorneys for appellee.

James W. Hart for appellants.

\* \* \* \* \*

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment by the Erie County Court of Common Pleas, General Division, which granted the motion for Civ.R. 23(B)(3) class certification by plaintiff-appellee, George Sortino, over the objections of defendants-appellants Calfee, Halter, & Griswold, LLP, James F. Lang, and Fritz E. Berckmueller. For the reasons set forth below, this court affirms the trial court's judgment.

{¶ 2} Appellants set forth two assignments of error:

    1. The trial court erred in determining that common questions predominate.

2. The trial court erred in generally certifying a class as to "all issues raised" in the pleadings.

## I. Background

**{¶ 3}** The scope of this appeal is the trial court's methodical, comprehensive, and arguably exhaustive April 3, 2024, 62-page decision granting Civ.R. 23(B)(3) class certification to appellee, upon appellee's motion dated August 15, 2023, and opposed by appellants. Previously, on January 10, 2019, appellee filed a class-action complaint, as amended, against appellants for causes of action for legal malpractice and for breach of fiduciary duty.[1] Appellee generally alleged that appellants mishandled an underlying class action lawsuit against the Ohio Department of Natural Resources ("ODNR")[2] when they settled count No. two (a.k.a. "Count II") of the litigation under the rules applicable to a Civ.R. 23(B)(2) action for injunctive relief, rather than under the rules applicable to a Civ.R. 23(B)(3) action for individual money damages. Appellee, for himself and similarly situated class members, sought various remedies, including compensatory damages, punitive damages, and disgorgement of all fees received by appellants from their representation of appellee and other class members in the underlying class action. The trial court properly did not seek to decide those ultimate questions when it decided appellee's motion.

---

[1] The underlying Erie County Common Pleas Court case was captioned *George Sortino v. Calfee, Halter & Griswold LLP, et al.*, and assigned case No. 2019-CV-0019.
[2] The underlying Lake County Common Pleas Court class action case was captioned *State ex rel. Robert Merrill, Trustee, et al, v. Ohio Dept. of Natural Resources, et al,* and assigned case No. 04CV001080.

2.

{¶ 4} The trial court went to great lengths in its decision to define the class being certified under Civ.R. 23(B)(3) as "the absentee class members." An "absentee class member" is a subset of the *State ex rel. Merrill v. State Dept. of Nat. Resources*, 2020-Ohio-6811 (11th Dist.), Civ.R. 23(B)(2)-certified class members who, despite the monetary settlement of *Merrill's* underlying count No. two, are not satisfied. As stated in the trial court's decision:

> Count II of the First Amended Complaint in the *Merrill* litigation sought a mandatory injunction requiring the State of Ohio to commence appropriation proceedings against all the littoral property owners abutting Lake Erie for the wrongful temporary taking of their private property as provided by Article I, § 19, of the Ohio Constitution. Count II of the First Amended Complaint in the Merrill litigation alleges:
>
> 35. ODNR's arbitrary and capricious assertion of ownership and exercise of ownership rights over the lands owned by Plaintiffs at and below OHW [Ordinary High Water mark] constitutes an unconstitutional temporary taking of those lands, and Plaintiffs have a clear right to receive compensation from ODNR for such taking or appropriation pursuant to Article I, Section 19 of the Ohio Constitution and the Fifth Amendment to the U.S. Constitution.
>
> 36. Plaintiffs have no plain and adequate remedy in the ordinary course of law to require ODNR to compensate them fairly for the losses they have incurred as a result of ODNR's uncompensated taking of their privately-owned real property.
>
> 37. ODNR is under a clear legal duty to commence appropriation proceedings in the Probate Court of the respective counties in which the respective properties owned by Plaintiffs are located to determine the amount of compensation due to each of the Plaintiffs for the real property temporarily taken and for damage to the residue of their respective real properties.

{¶ 5} Both parties agree there are an estimated 15,500 littoral owners of real property abutting Lake Erie's southern shoreline within Lucas, Ottawa, Sandusky, Erie, Lorain, Cuyahoga, Lake, and Ashtabula counties. The trial court acknowledged that "there are common records that can be used to objectively determine how many *Merrill*

3.

class members continued to own their lakefront property at the time of the *Merrill* settlement." However, the trial court stated, "this is a substantive issue that must be determined on the merits at a later stage in the litigation, not on a motion to certify the class under Civ.R. 23(B)(3). For class certification purposes, the important point is that littoral property ownership can be established on any relevant date from common records."

{¶ 6} Appellee, for himself and on behalf of the "absentee class members," alleges that when appellants abandoned the count No. two *Merrill* claim for injunctive relief in exchange for individualized cash payments to class members who filed claims, appellants had a duty to the "absentee class members" to advocate to settle under the rules applicable to a Civ.R. 23(B)(3), not a Civ.R. 23(B)(2), class. By appellants failing to employ the mandatory notice provisions of Civ.R. 23(C)(2)(b), the "absentee class members" did not receive actual notice of the *Merrill* settlement to submit claims and allege injuries for which they were not compensated. Their remedy was to seek a separate class certification under Civ.R. 23(B)(3), for which appellee was successful and for which appellants now appeal the trial court's decision.

{¶ 7} Whether these Civ.R. 23(B)(3) "absentee class members" are a subset of the *Merrill* Civ.R. 23(B)(2) class members, or a duplicate set of those *Merrill* members, they can maintain their dual identities. The Eleventh District Court of Appeals agreed, and we see no reason to depart from their reasoning. *Merrill,* 2020-Ohio-6811, at ¶ 8 (11th Dist.). "The fact that money damages are also sought in addition to injunctive relief does not

4.

defeat certification under Civ.R. 23(B)(2)." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 87 (1998).

## II. Standard of Review

{¶ 8} "'A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion.'" *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 19, quoting *Marks v. C.P. Chemical Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus. "However, a trial court's discretion must be exercised within the framework of Civ.R. 23." *Estate of Mikulski v. Toledo Edison Co.*, 2021-Ohio-361, ¶ 16 (6th Dist.), citing *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 70 (1998). A trial court abuses its discretion "when its decision is 'unreasonable, arbitrary, or unconscionable.'" *Cullen* at ¶ 19, quoting *Wilson v. Brush Wellman, Inc.*, 2004-Ohio-5847, ¶ 30.

{¶ 9} Our abuse-of-discretion standard of review is shaped by clear Ohio Supreme Court guidance.

> It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. (Emphasis in original.)

*AAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its

5.

discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris*, 2012-Ohio-2407, ¶14. "[A]t no point did we elevate the abuse-of-discretion standard to the level of something akin to an 'intentional blunder' or lower it to a mere finding that the trial court's analysis is 'lacking rigor.'" *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 483 (2000). "The trial court enjoys the same broad discretion it always had in determining class action certification, and the court of appeals remains bound to affirm that determination absent a showing of an abuse of discretion." *Id.*

### III. The Trial Court's Decision

{¶ 10} Given our foregoing standard of review, we find that the trial court employed sound reasoning that does not constitute an abuse of discretion.

{¶ 11} The trial court's 62-page decision comprehensively addresses the following matters: (1) the scope of appellee's motion for Civ.R. 23(B)(3) class certification; (2) appellee's definition of the proposed Civ.R. 23(B)(3) class as compared to the *Merrill* Civ.R. 23(B)(2)-certified class; (3) the scope of the settlement of count No. two of the *Merrill* Civ.R. 23(B)(2)-class action; (4) appellee's claims for monetary relief in the proposed Civ.R. 23(B)(3)-class action; (5) appellee's theories of appellants' liability in the proposed Civ.R. 23(B)(3)-class action; and (6) appellants' pleading answering appellee's claims in the first amended class-action complaint. The trial court then determined that appellee proved by a preponderance of the evidence each of the seven Civ.R. 23 requirements for Civ.R. 23(B)(3) class certification, appellee's membership in

6.

the class and his fair and adequate representation of the class, and appellee's attorneys are well qualified to represent the class.

{¶ 12} The trial court analyzed Civ.R. 23(A), 23(B)(3), 23(C)(1), and 23(F). Appellants generally challenge the trial court's determination that appellee proved by a preponderance of the evidence each of the seven Civ.R. 23 requirements for Civ.R. 23(B)(3) class certification, citing *Cullen*, 2013-Ohio-4733, at ¶ 12, quoting *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 2010-Ohio-1042, ¶ 6, which are:

> "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met."

{¶ 13} The trial court then analyzed the due process rights of the "absentee class members" under Civ.R. 23(B)(2) in the now-resolved *Merrill* case and under Civ.R. 23(B)(3) in this matter and concluded:

> [T]he greater due process rights afforded absentee members of Civ.R. 23(B)(3) classes include more demanding requirements for notice to individual class members of both class certification and of any proposed settlement; more detailed requirements regarding the content of notices given to absentee class members about the claims or defenses involved in the action; and information about the individual rights of absentee class members, including the right to opt out of the class, either at the certification or the settlement stage of the litigation.

{¶ 14} For the first class-action requirement, the trial court found that appellee established that an identifiable Civ.R. 23(B)(3) class exists with an unambiguous

7.

definition: the subset of Civ.R. 23(B)(2) *Merrill* class members who did not receive actual notice of the *Merrill* settlement to submit claims and received no compensation from the *Merrill* settlement. The trial court rejected, for three reasons, appellants' argument that, although they represented all 15,500 members of the *Merrill* class, class members who received any type of notice should be excluded: (1) it is a merit argument regarding one of appellants' stated affirmative defenses in its answer; (2) "it is, with one possible exception, speculative whether there are in fact a significant number of members of the proposed [appellee] class who are members of this potential sub-class"; and (3) at best it is "related to only one of several grounds for the legal malpractice and breach of fiduciary duty claims being made by [appellee] on behalf of the whole class,"

{¶ 15} Second, the trial court found that appellee made a prima facie showing he is a member of the Civ.R. 23(B)(3) class. The trial court found that appellants tacitly admit in their briefs that appellee was an absentee member of the *Merrill* class through his filings in *Merrill* for unsettled claims.

{¶ 16} Third, the trial court found that under Civ.R. 23(A)(1), the "parties agree there were approximately 15,500 members of the *Merrill* class, and there are well over 10,000 potential members of the class in this case," making joinder of all members impracticable.

{¶ 17} Fourth, the trial court found that under Civ.R. 23(A)(2) there are important questions of law or fact common to the class, which the parties do not dispute.

{¶ 18} Fifth, the trial court found that under Civ.R. 23(A)(3) appellee's claims of legal malpractice and breach of fiduciary duty are typical of the claims of the class. The

8.

trial court rejected appellants' argument that under *Cheatham I.R.A. v. Huntington Natl. Bank*, 2019-Ohio-3342, ¶ 37-38, analyzing Civ.R. 23(B)(3) rather than Civ.R. 23(A), the typicality requirement was overruled. "[I]f the framers of Civ.R. 23(A)(3) had intended to require all class representatives, including Civ.R. 23(B)(3) class representatives, to have 'the same interest and suffer the same injury as the class members', they would have used those terms, instead of requiring that a representative's claims be typical of the claims of the class." Quoting *Baughman*, 88 Ohio St.3d at 484, the trial court found clear guidance that "the typicality requirement of Civ.R. 23(A)(3) . . . is met when 'the interests of the named plaintiffs are substantially aligned with those of the class.'" Further, the trial court found that under *Baughman*, "typicality exists when the named plaintiff's claim is based on: 1) the same course of conduct of the defendants; and 2) the same legal theory or theories. *Id.* at 485. The trial court determined appellee's interests are "substantially aligned" with the class:

> Here, it is undisputed that all of [appellee's] personal claims arise out of the same conduct of [appellants] that was directed toward all the members of the proposed class. All [appellee's] asserted theories of liability apply to all the members of the proposed class. In other words, if [appellee] is entitled to judgment on one or more of [appellee's] theories of liability, then each of the members of the proposed class is entitled to judgment on such theories. Conversely, if [appellants] are entitled to judgment on one or more of [appellee's] theories of liability, [appellants] are entitled to judgment against all the proposed class members on such theories.

{¶ 19} The trial court further determined that appellee's claims relate both to the manner of giving notice (i.e., whether the notice sent by appellants was reasonably calculated to notify *Merrill* class members of the terms of the settlement where he alleges

9.

appellants did not make any efforts to identify the absentee class members) and to the content of the notice of the settlement of count No. two of the *Merrill* litigation for the Civ.R. 23(B)(2) class members.

{¶ 20} Sixth, the trial court found that under Civ.R. 23(A)(4), appellee fairly and adequately protects the interests of the class. Citing *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 98 (1988) ("A representative is deemed adequate so long as his interest is not antagonistic to that of the other class members."), the trial court determined appellants presented no evidence in the record that appellee's personal interests were antagonistic to the other class members. The trial court further determined that whether or not appellee's current choice of class counsel[3] is adequate, under Civ.R. 23(F), is a separate determination that did not affect appellee's adequacy to represent the class.

{¶ 21} Then under Civ.R. 23(F)(2), the trial court found that the factors stated in Civ.R. 23(F)(1) and (4) were met by appellee's current choice of class counsel. The trial court found that under Civ.R. 23(F)(1)(a)(i), the proposed class counsel had been "actively involved in investigating and litigating the issues involved in this case on behalf of [appellee] for more than five years and has been prosecuting this action for more than four years. . . [T]o find counsel with comparable knowledge of the relevant facts and legal issues involved in this litigation [is unlikely]." The trial court found that under Civ.R. 23(F)(1)(a)(ii), the proposed class counsel had "many years of experience in handling complex litigation." The trial court found that under Civ.R. 23(F)(1)(a)(iii), the

---

[3] Murray & Murray Co., L.P.A.

10.

proposed class counsel had "demonstrated a comprehensive knowledge of the applicable law." The trial court found that under Civ.R. 23(F)(1)(a)(iv), the proposed class counsel had "the resources and willingness to commit those resources to representing the class." The trial court found that under Civ.R. 23(F)(4), the proposed class counsel shall fairly and adequately represent the interests of the class. The trial court found that appellants not only failed to establish any specific facts relevant to any of their specific defenses that can only be established through the testimony of a Murray & Murray lawyer and not within attorney-client privilege, but also failed to establish any prejudice to any of the claims being made on behalf of the class.

{¶ 22} Seventh, the trial court found that under Civ.R. 23(B)(3), appellee met the requirements for certifying the class action for the legal malpractice and breach of fiduciary duty claims, which are "essentially a mass tort action." Citing *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 429-30 (1998), the trial court found there was generalized evidence which proved or disproved one or more elements of a class-wide claim simultaneously, obviating the need to examine each class member's individual position on the issue. The trial court found that for the legal malpractice and breach of fiduciary duty claims "there is a common core of conduct that is directed against all members of the plaintiff class . . . [the] tort claims [are] based upon an alleged common course of wrongful conduct by [appellants] directed against all the members of the proposed class. There is no allegation of misconduct by the [appellants] that is alleged to have been directed against any individual Class Member or any discrete sub-class of Class Members."

{¶ 23} For the legal malpractice and breach of fiduciary duty claims, the trial court found that appellee's evidence, which will require expert opinion testimony, will be common to every member of the proposed class to prove the essential elements:

> 1) the duty or obligation owed to all members of [appellee's] proposed class; 2) "a breach of that duty or obligation and that the attorney failed to conform to the standard required by law;" and 3) "a causal connection between the conduct complained of and the resulting damage or loss." . . . Any potential individualized issue regarding the amount of money damages that will compensate individual class members will only arise if [appellee] prevails on all of the common issues of [appellants'] liability to the class.

{¶ 24} The trial court next rejected appellants' argument "that individualized evidence must be used to prove the element of injury in fact" because:

> First, it is common for individualized issues regarding the quantum of damages to arise in mass tort cases certified under Civ.R. 23(B)(3). Second, Civ.R. 23(B)(3) protects the rights of individual class members who wish to pursue individualized claims by giving Civ.R. 23(B)(3) class members the option to opt out of the class - both at the certification stage and at the compromise settlement stage.

{¶ 25} The trial court then reviewed how appellants' arguments opposing class certification focus on Civ.R. 23(B)(3)(d), "the likely difficulties in managing a class action." First, the trial court found that whether Civ.R. 23(E)(1) required direct notice to every *Merrill* class member is not an individualized issue to defeat the predominance requirement. For purposes of Civ.R. 23(B)(3), "it is generally held that in determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all

12.

members of the class in a single adjudication." *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984).

{¶ 26} "The issue of whether the members of [appellee's] proposed class were denied due process of law by the failure of [appellants] to advocate for giving notice to the *Merrill* class members under Civ.R. 23(B)(3), rather than Civ.R. 23(B)(2), is a material issue of law that is common to every member of [appellee's] proposed class." Appellants' arguments based on the manner and content of notice to the class members in this case will be addressed by the trial court under Civ.R. 23(C)(2) after the issue of class certification is decided under Civ.R. 23(C)(l).

{¶ 27} Next, the trial court found that the injury, or the fact of damage, is an issue that can be resolved based upon common evidence, not individualized evidence. The injury which every class member is alleged to have suffered "is the loss of their individual constitutional right to be compensated in the manner provided by Article I, §19, of the Ohio Constitution due to [appellants'] alleged legal malpractice and breach of fiduciary duty in settling Count II of the *Merrill* litigation under the rules applicable to a Civ.R. 23(B)(2) action for injunctive relief, rather than under the rules applicable to a Civ.R. 23(B)(3) action for individual money damages."

{¶ 28} Next, the trial court found that causation is not an individualized issue that defeats predominance. The trial court declined to take judicial notice of appellants' argument based on speculation that every class action settlement has "a substantial percentage of class members who area aware of the settlement [and] do not make a

13.

claim" or other mischaracterizations of the factual and legal basis of appellee's claims. The trial court further declined to decide the merits of appellant's affirmative defenses.

{¶ 29} Next, the trial court found that whether appellants are liable to appellee on "contentions related to attorney fees" is also not an individualized issue to defeat the predominance requirement for the same foregoing reasons.

{¶ 30} Finally, the trial court found that under Civ.R. 23(B)(3), class action is superior to other methods of adjudication. Citing *Schmidt*, 15 Ohio St.3d at 313, where the trial court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein, the trial court determined that the only other apparent procedure available to the over 10,000 class members with a potential judicial remedy for their claims "would be the filing of more than 10,000 individual actions in the eight counties that border Lake Erie." The trial court stated that appellants "have not advanced a better procedure than a class action for resolving these disputes and protecting the due process rights of the . . . class members."

{¶ 31} The trial court then ordered:

> Pursuant to Civ.R. 23(C)(l)(a) & (b), this action is hereby certified as a Civ.R. 23(B)(3) class action for the purpose of resolving all issues raised in [appellee's] First Amended Complaint and [appellants'] Answer to the First Amended Complaint.
> Pursuant to Civ. R. 23(C)(l)(b), the Court hereby appoints George Sortino as Class Representative and defines the Plaintiff Class as:
> All of the approximately 15,500 private littoral owners of parcels of real property abutting Lake Erie within the State of Ohio who were members of the Civ .R. 23(B)(2) class certified for the resolution of the Count II claims in the *Merrill* litigation, who were *not* sent actual individualized notice of the settlement of the *Merrill* litigation, who did not

14.

file a Proof of Claim with the Settlement Administrator, and who have received no monetary compensation from the *Merrill* settlement, despite the taking of their property by the State of Ohio and ODNR.

Pursuant to Civ. R. 23(C)(l)(b), the Court hereby appoints Murray & Murray, Co., LP.A. as Class Counsel.

## IV. Analysis

{¶ 32} Appellants' first assignment of error challenges the trial court's decision to grant appellee class certification under Civ.R. 23(B)(3), which states:

(B) A class action may be maintained if Civ.R. 23(A) is satisfied, and if: . . .
(3) The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(a) The class members' interests in individually controlling the prosecution or defense of separate actions;
(b) The extent and nature of any litigation concerning the controversy already begun by or against class members;
(c) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(d) The likely difficulties in managing a class action.

{¶ 33} Appellants argue for their first assignment of error that the trial court committed two reversible errors when it determined that questions of law or fact common to the class members predominate over any questions affecting only individual members. First, appellants argue that breach of duty to each class member is individualized, not a common fact. Second, appellants argue that damages to each class member is individualized, not a common fact. Third, appellants argue that class members with actual notice of the settlement, and who failed to object, waived their claims, which supports individual inquiry of their knowledge of the settlement.

15.

{¶ 34} In response, appellee argues that where the claims in the underlying complaint allege appellants' legal malpractice and breach of fiduciary duty, the trial court correctly determined those are matters of common questions of law that predominate over individual questions of fact. Appellee further argues that where the claim in the underlying complaint alleges damage incurred by the entire class, the trial court correctly determined the fact of damages is a matter of common question of fact that predominates over individual questions of fact. Appellee further argues that where the claim in the underlying complaint alleges attorneys' fees incurred by appellee for the entire class, the trial court correctly determined the attorneys' fees claim is a matter of common question of law that predominates over individual questions of fact.

{¶ 35} Appellee can prove, at least theoretically at this point, through common evidence, appellant owed a duty to all "absentee class members" and that they were in fact injured by appellants' actions. Appellee's injuries and claims are rooted in the constitutional right to be compensated in the manner provided by Article I, §19, of the Ohio Constitution. This is not an inchoate, nascent right awaiting to ripen. Indeed, Article 1, Section 19 of the Ohio Constitution, adopted effective September 1, 1851, at the 1851 constitutional convention, clearly states:

> Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

16.

Ohio Const., art. I, § 19. The loss of a constitutional right is an injury. *See Am. Fedn. of Govt. Employees, AFL-CIO v. Sullivan,* 744 F.Supp. 294 (D.D.C. 1990), citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

{¶ 36} Furthermore, while the inability at this juncture to determine with precision the amount of damages is invariably an individual question, it does not defeat class-action treatment at this stage of the litigation. *Felix v. Ganley Chevrolet, Inc.,* 2015-Ohio-3430, ¶ 34 (whether there is damage-in-fact, pertaining to the existence of injury as a predicate to liability, is distinct from actual damages, pertaining to the quantum of injury related to the appropriate measure of individual relief). Here, at the class-certification stage, appellee alleges common evidence suggesting that all class members suffered an injury-in-fact (notwithstanding questions regarding the individual damages calculations for each class member), thereby showing predominance under Civ.R. 23(B)(3). *Marck v. Partin,* 2024-Ohio-4829, ¶ 48-49 (12th Dist.), *appeal not allowed,* 2025-Ohio-231 ("In other words, the question of whether class members have suffered damage-in-fact may be resolved in a class action even though the quantification of the damages must be resolved individually in separate proceedings.")

{¶ 37} Appellants' arguments supporting its first assignment of error are a litany of their reasoning supporting their defenses to appellee's legal malpractice and breach of fiduciary duty claims. For example, appellants argue that *Merrill* class members with actual knowledge of the settlement and who failed to file a claim waived their right to assert a claim. The trial court has yet to address the merits of appellee's claims and of

17.

appellants' defenses, and we will not do so in this appeal. At this class-certification stage of the litigation, we agree with the trial court's thorough predominance analysis determining that common to every "absentee class member" is the due process claim for appellants' failure to give notice to the *Merrill* class members under Civ.R. 23(B)(3), rather than under Civ.R. 23(B)(2). Where the trial court's depth of predominance analysis and reasoned conclusions that questions common to the "absentee class members" outweigh the individual questions, we cannot hold that the trial court abused its discretion. *See Wilson*, 2004-Ohio-5847, at ¶ 30.

{¶ 38} The trial court's judgement frequently notes that the issue presented to it was class certification and that the substantive merits of the underlying legal malpractice and breach of fiduciary duty claims are properly left for further discovery. We agree with the trial court's approach at this point to not analyze the second "case within a case" on the ultimate success of the underlying claims and confine a discussion to class certification only. We can find no abuse of discretion in this approach.

{¶ 39} Appellants' first assignment of error is not well-taken.

{¶ 40} Appellants' second assignment of error challenges the trial court's decision to grant appellee class certification on "all issues raised" in violation of Civ.R. 23(C)(1)(b), which states: "(1) Certification order. . . (b) Defining the class; appointing class counsel. An order that certifies a class action shall define the class and the class claims, issues, or defenses, and shall appoint class counsel under Civ.R. 23(F)." Appellants argue that "all issues raised" is too broad and violates the rule because "[n]ot

18.

every issue raised in the pleadings is appropriately certifiable" nor is every fact appellee proves for himself is proven for the class.

{¶ 41} In response, appellee argues no trial court error where it certified this case as a class action to proceed for "all issues raised in" appellee's complaint, as amended, and appellants' answer. The trial court's order is clear and unambiguous. It plainly defines the class, the class's claims, and the defendants' defenses. We agree.

{¶ 42} The trial court complied with Civ.R. 23(C)(1)(b) because it: (1) defined the Civ.R. 23(B)(3) class, (2) defined the class claims, issues, or defenses on all issues raised in appellee's first amended complaint, which alleged legal malpractice and breach of fiduciary duty by appellants, and appellants' defenses to such claims, and (3) under Civ.R. 23(F) appointed Murray & Murray Co., LLP as class counsel. We find the legal malpractice and breach of fiduciary duty claims by appellee and appellants' defenses thereto are not so broad as to violate Civ.R. (C)(1)(b).

{¶ 43} Upon review we find the trial court's decision contains a sound reasoning process that would support its decision granting the motion for Civ.R. 23(B)(3) class certification. The trial court's judgement frequently notes that the issue presented to it was class certification and that the substantive merits of the underlying legal malpractice and breach of fiduciary duty claims are properly left for further discovery. We agree with the trial court's approach at this point to not analyze the second "case within a case" on the ultimate success of the underlying claims and confine a discussion to class certification only. We can find no abuse of discretion in this approach.

{¶ 44} Appellants' second assignment of error is not well-taken.

19.

## V. Conclusion

**{¶ 45}** On consideration whereof, the judgment of the Erie County Court of Common Pleas, General Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See*, *also*, 6th Dist.Loc.App.R. 4.

| | | |
|---|---|---|
| Thomas J. Osowik, J. | | [[Applied Signature]] |
| | | JUDGE |

| | | |
|---|---|---|
| Myron C. Duhart, J. | | [[Applied Signature 2]] |
| CONCUR. | | JUDGE |

Charles E. Sulek, P.J.
DISSENTS AND WRITES
SEPARATELY.

**SULEK, P.J., dissenting.**

**{¶ 46}** Because the named plaintiff, George Sortino, cannot demonstrate with common evidence that each class member was proximately injured by the conduct of defendants, Calfee, Halter, & Griswold, LLP, James Lang, and Fritz Berckmueller (collectively "Calfee"), he cannot satisfy the predominance requirement for a class action

under Civ.R. 23(B)(3). I, therefore, respectfully dissent, and would hold that the trial court abused its discretion when it certified the class.

## I. Factual Background and Procedural History

{¶ 47} This proposed class action arises from a separate class action for which Calfee served as class counsel.

## A. Underlying *Merrill* Litigation

{¶ 48} Between the late 1990s and early 2000s, the Ohio Department of Natural Resources ("ODNR") asserted that the State owned all Ohio land on the lakeward side of the ordinary high water mark of Lake Erie, and began forcing some property owners who wished to use their lakefront property below that mark to lease the land from the State.

{¶ 49} In 2004, Calfee, on behalf of several named plaintiffs and a proposed class of approximately 15,000 private owners of real property abutting Lake Erie within the State of Ohio, filed a two-count complaint against ODNR in the Lake County Court of Common Pleas (the "*Merrill*" litigation). In Count I of *Merrill*, the plaintiffs sought a declaratory judgment that they owned fee title to lands located below the ordinary high water mark, that ODNR lacked authority to compel any plaintiff to lease property that the plaintiff already owned, and that any lease of land below the ordinary high water mark was void and invalid. In Count II, the plaintiffs argued that ODNR's conduct was an unconstitutional temporary taking of their property and sought to compel ODNR to commence appropriation proceedings to determine the amount of compensation owed to each plaintiff.

21.

{¶ 50} In 2006, the trial court in *Merrill* certified a class under Civ.R. 23(B)(2) on Count I, which consisted of "all persons . . . who are owners of littoral property bordering Lake Erie (including Sandusky Bay and other estuaries previously determined to be a part of Lake Erie under Ohio Law) within the territorial boundaries of the State of Ohio." Notably, Civ.R. 23(B)(2) applies where "[t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

{¶ 51} Litigation continued, and in 2011, the Ohio Supreme Court rejected ODNR's asserted property line and held that "the territory of Lake Erie held in trust by the state of Ohio for the people of the state extends to the natural shoreline, which is the line at which the water usually stands when free from disturbing causes." *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 2011-Ohio-4612, ¶ 59. The matter was remanded to the trial court for further proceedings.

{¶ 52} In 2012, the trial court determined that the same class that was certified for Count I could be certified for Count II under Civ.R. 23(B)(2). ODNR appealed the class certification, and it was ultimately affirmed.

{¶ 53} After further litigation, Calfee negotiated a class-wide settlement in May 2016. In addition to receiving a release from ODNR and an agreed injunction against the prosecution of actions relating to ODNR's claims of public trust ownership landward of the Lake Erie natural shoreline, the settlement also included a fund of $6,100,000, from which $1,720,091.51 was reserved for the refund of lease payments collected by ODNR

22.

between 1998 and 2015.  The fund also reserved $600,000 to reimburse some of the named plaintiffs for attorney fees that were paid out-of-pocket to litigate Count I.

{¶ 54} The remainder of the fund—less attorney fees attributable to litigating Count II, as well as any administration and notice costs—was reserved for payments under an agreed-upon formula to all class members that submitted a valid claim through a court-approved claims process.

{¶ 55} Notice of the settlement was provided to class members consistent with Civ.R. 23(E)(1), which provides that the trial court "shall direct notice in a reasonable manner to all class members who would be bound by the proposal."  Specifically, the trial court ordered that direct notice would go to persons for whom physical or e-mail addresses were reasonably available, including those persons who had made lease payments to ODNR.  Sortino alleges that only 2,829 members of the class received direct notice by mail.  For the remainder of the approximately 15,000-member class, because direct notice to all class members was not practicable, the trial court ordered that notice be provided by publication once per week for three consecutive weeks in seven newspapers serving communities along Lake Erie or with statewide reach, including the Cleveland Plain Dealer and the Sandusky Register.

### B. Sortino's Attempted Litigation Against ODNR

{¶ 56} Sortino was a member of the class in *Merrill*.  He alleges that he did not receive notice of the *Merrill* litigation or settlement; however, had he received notice, he asserts that he would have submitted a claim.

23.

{¶ 57} In January 2018, Sortino filed a "copycat" complaint against ODNR in the Erie County Court of Common Pleas on behalf of himself and "all other members of a Class defined as all of the approximately 15,500 private littoral owners of parcels of real property butting Lake Erie within the State of Ohio who were not sent notice of the settlement of the case captioned *State ex rel. Robert Merrill, et al v. State of Ohio, Department of Natural Resources, et al,* Case No. 04CV001080, filed in the Court of Common Pleas, Lake County Ohio; and who did not file a Proof of Claim with the Settlement Administrator." The 2018 complaint sought to litigate the same issues that were resolved in the *Merrill* litigation.

{¶ 58} ODNR opposed Sortino's 2018 complaint, and filed a motion to enforce the settlement and for civil contempt in the Lake County Court of Common Pleas. Sortino's Erie County case was stayed pending the Lake County proceedings. Eventually, the Lake County court granted ODNR's motion, and the Eleventh District affirmed in *State ex rel. Merrill v. State Dept. of Natural Resources*, 2020-Ohio-6811 (11th Dist.). Sortino subsequently dismissed his 2018 Erie County action against ODNR.

### C. Sortino's Present Complaint Against Calfee

{¶ 59} While his action against ODNR was pending, Sortino filed the present class action complaint against Calfee on January 10, 2019. The complaint was later amended on July 26, 2022. In the amended complaint, Sortino alleges that Calfee committed legal malpractice and breached its fiduciary duty in its representation of the *Merrill* class both in the procedure of the settlement and in the substantive terms of the settlement.

24.

{¶ 60} As to the procedure, Sortino alleges that Calfee's failure to insist that actual notice be provided to all the *Merrill* class members violated their right to due process. The gravamen of his argument relates to the *Merrill* class being certified under Civ.R. 23(B)(2), which pertains to claims for injunctive or declaratory relief, and which therefore requires a less stringent notice of class certification under Civ.R. 23(C)(2)(a), namely that "the court may direct appropriate notice to the class."  He contends, however, that when Calfee settled the *Merrill* litigation, it negotiated monetary damages that would more correlate to a class certified under Civ.R. 23(B)(3).  Notice of class certification under Civ.R. 23(B)(3) is more stringent, requiring that "the court shall direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Civ.R. 23(C)(2)(b).  Sortino argues that it was legal malpractice and a breach of fiduciary duty to not advocate for recertifying the class under Civ.R. 23(B)(3) and for failing to ensure that class members received the best notice that is practicable, including direct, individualized notice.

{¶ 61} As to the substantive terms, Sortino maintains that Calfee breached its fiduciary duty when it entered into a settlement agreement that gave preferential treatment to the named plaintiffs, to the individuals who entered into lease agreements with ODNR, and to itself, at the expense of the remaining, allegedly un-notified class members.

{¶ 62} Calfee moved to dismiss the amended complaint, or in the alternative for summary judgment, arguing that Sortino was collaterally estopped from challenging the

25.

adequacy of his legal representation in *Merrill* and that his complaint was an improper

collateral attack on the *Merrill* settlement. The trial court denied Calfee's motion.

### D. Sortino's Motion for Class Certification

**{¶ 63}** Thereafter, Sortino filed his motion for class certification under Civ.R.

23(B)(3). He defined his proposed class as:

> All of the approximately 15,500 private littoral owners of parcels of real property abutting Lake Erie within the State of Ohio who were not sent actual individualized notice of the settlement of the *Merrill* litigation, who did not file a Proof of Claim with the Settlement Administrator, and who have received no monetary compensation from the *Merrill* settlement, despite the taking of their property by the State of Ohio and ODNR.

**{¶ 64}** Civ.R. 23(B)(3) allows for certification of a class where "[t]he court finds

that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy." It identifies

several pertinent matters, including:

> (a)     The class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b)     The extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c)     The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (d)     The likely difficulties in managing a class action.

Civ.R. 23(B)(3)(a)-(d).

26.

{¶ 65} Calfee opposed the class certification, arguing, inter alia, that individualized issues of law and fact overwhelmed any common issues and rendered class treatment unmanageable. It argued, in particular, that whether direct notice was required under Civ.R. 23(E)(1) was an individualized issue because that rule required notice "in a reasonable manner," and while direct notice might be reasonable for some class members, it might be unreasonable for others who, for example, had moved or died during the class period and whose new address or next of kin would be difficult to locate.

{¶ 66} Sortino responded that this argument addressed only part of his claim, and did not consider Calfee's conduct which included negotiating a settlement agreement that did not allow class members to opt out and released all future claims against ODNR. Further, regarding the lack of notice specifically, Sortino argued that the relevant issue is not the difficulties that may have been encountered in identifying and notifying each of the class members, but instead the issue is what method of identifying as many class members as possible is reasonable and did Calfee make a reasonable effort to do so. He contended that "[t]he focus should be on the efforts made by the Calfee Defendants, and not on the difficulties that could have been experienced in reviewing individual property records."

{¶ 67} Alternatively, Calfee argued that the element of injury, or "fact of damages," was also an individualized issue. Calfee noted that some *Merrill* class members received direct notice yet did not file a claim, while other *Merrill* class members filed a claim despite not receiving direct notice. It contended that to demonstrate injury from its alleged legal malpractice or breach of fiduciary duty, Sortino

27.

would have to show that each plaintiff would have either filed a claim or objected to the settlement had he or she received direct notice. Calfee maintained that such a showing would require evidence personal to each plaintiff, thereby defeating the predominance requirement under Civ.R. 23(B)(3).

{¶ 68} To this, Sortino responded that it was not necessary to show that a plaintiff would have filed a claim, objected to the settlement, or opted out to show an injury. Sortino maintained that it was the deprivation of the information contained in the notice and the options it presented that constituted the injury. Specifically, he argued that the "denial of notice and the opportunity to be heard is an injury to the class."

### E. Trial Court's Judgment Certifying the Class

{¶ 69} Following complete briefing and a hearing on the issue, the trial court entered its judgment certifying Sortino's class under Civ.R. 23(B)(3). In its 62-page decision, the trial court examined each of the factors for class certification. Relevant here, the trial court determined that questions of law or fact common to class members predominate over any questions affecting only individual members.

{¶ 70} As to what level of notice was required to be given to the class members, the trial court identified that the pertinent issue was whether members of Sortino's proposed class were denied due process of law by the failure of Calfee to advocate for giving notice to the *Merrill* class members under Civ.R. 23(B)(3) rather than Civ.R. 23(B)(2). It agreed with Sortino that the focus should be on the efforts made by Calfee, and not on the difficulties that could have arisen in locating and notifying individual class

28.

members.  Thus, the trial court found that the issue of notice is subject to common resolution that predominates over individualized resolution.

{¶ 71} On the issue of the element of injury, or "fact of damages," the trial court first defined the injury suffered by the proposed Sortino class as

> the loss of their individual constitutional right to be compensated in the manner provided by Article I, § 19, of the Ohio Constitution due to the Calfee Defendants' alleged legal malpractice and breach of fiduciary duty in settling Count II of the *Merrill* litigation under the rules applicable to a Civ.R. 23(B)(2) action for injunctive relief, rather than under the rules applicable to a Civ.R. 23(B)(3) action for individual money damages.

It specifically noted that the injury "is not limited to the manner of giving notice to class members [i.e. direct mail versus publication]," while still recognizing that Sortino also alleged that the content of the notice was deficient.  It then found that the class members' loss of their individual constitutional rights to be compensated for a government taking due to Calfee's alleged breach of fiduciary duty is an issue that may be proven by evidence common to every proposed class member.

{¶ 72} Curiously, the trial court justified its decision by quoting Sortino's Reply in Support of Class Certification, in which Sortino expressly stated that the injury *was not* the failure to receive compensation for the State's taking as the court determined, but rather that the injury was the failure to receive notice regarding the terms of the settlement, how to file a claim, and their right to object, as well as the negotiated deprivation of their right to opt out:

> It is not the fact that the *Sortino* class members did not receive distributions from the *Merrill* settlement fund that is the injury.  It is the fact that the Calfee Defendants, while representing the class, purposely decided that the great majority of the *Merrill* class would not be provided

29.

with the actual, court-approved Notice of the settlement. This court-approved Notice not only instructed class members how to file a claim for a portion of the settlement funds, and notified them how that disbursement would be calculated. That Notice also informed them of their right to object to any term in the settlement if they disagreed, that they would be bound by the release of all claims against ODNR, their right to attend the final approval hearing and speak if they have an objection, and how to get additional information. Calfee also approved the provision that no class member would have the right to opt out. Negotiating away this valuable right, in addition to the decisions made by Calfee on the manner notice would be provided to the class, is another aspect of the malpractice and breach of fiduciary duty claims pled by Sortino.

{¶ 73} Upon concluding that Sortino satisfied every factor, the trial court certified his proposed class under Civ.R. 23(B)(3) "for the purpose of resolving all issues raised in Plaintiff Sortino's First Amended Complaint and the Calfee Defendants' Answer to the First Amended Complaint."

## II. Analysis

{¶ 74} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 19, quoting *Marks v. C.P. Chemical Co., Inc.*, 31 Ohio St.3d 200 (1987), syllabus; *Estate of Mikulski v. Toledo Edison Co.*, 2021-Ohio-361, ¶ 16 (6th Dist.). "However, a trial court's discretion must be exercised within the framework of Civ.R. 23." *Mikulski* at ¶ 16, citing *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 70 (1998). A trial court abuses its discretion "when its decision is 'unreasonable, arbitrary, or unconscionable.'" *Cullen* at ¶ 19, quoting *Wilson v. Brush Wellman, Inc.*, 2004-Ohio-5847, ¶ 30.

30.

## A. Standard for Class Certification under Civ.R. 23(B)(3)

{¶ 75} "A class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' . . . and '[t]o come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23.'" (Internal citations omitted for readability.) *Id.* at ¶ 11, quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

{¶ 76} Seven requirements exist for maintaining a class action under Civ.R. 23:

> "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met."

*Id.* at ¶ 12, quoting *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 2010-Ohio-1042, ¶ 6, quoting *Hamilton* at 71. The issues in this case center on the predominance requirement under Civ.R. 23(B)(3).

{¶ 77} Civ.R. 23(B)(3) provides that a class action may be maintained if "[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "This inquiry requires a court to balance questions common among class members with any

31.

dissimilarities between them, and if the court is satisfied that common questions predominate, it then should 'consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior.'" *Cullen* at ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs., Inc.*, 514 Fed.Appx. 299, 308 (4th Cir. 2013).

{¶ 78} "'For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must present a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication.'" *Id.* at ¶ 30, quoting *Marks* at 204. "'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Id.*, quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012).

## B. Individualized Questions Predominate over Common Questions Regarding Whether Each Class Member Suffered an Injury Proximately Caused by Calfee's Conduct

{¶ 79} Sortino has asserted claims of legal malpractice and breach of fiduciary duty.

{¶ 80} "To establish a cause of action for legal malpractice, a plaintiff must show 'the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach." *Ratonel v. Roetzel & Andress, L.P.A.*, 2016-Ohio-8013, ¶ 6, quoting *New Destiny Treatment Ctr., Inc. v. Wheeler*, 2011-Ohio-2266, ¶ 25; *Millican v. Albrechta & Coble, Ltd.*, 2018-Ohio-776, ¶ 15 (6th Dist.) ("The elements of legal malpractice are: (1) the attorney owed a duty or an obligation to the

32.

plaintiff; (2) there was a breach of that duty or obligation and the attorney failed to conform to the standard required by law; and (3) there is a causal connection between the conduct complained of and the resulting damage or loss.").

{¶ 81} Similarly, to establish a breach of fiduciary duty, the plaintiff must "establish the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the breach." *Wall-Meiring v. Gibson*, 2023-Ohio-664, ¶ 57 (6th Dist.), quoting *Newcomer v. Natl. City Bank*, 2014-Ohio-3619, ¶ 9 (6th Dist.); *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988).

{¶ 82} In its first assignment of error, Calfee identifies three specific issues that it believes are subject to individualized, not generalized, proof. The first concerns whether evidence common to the class can show that Calfee breached a duty to each member. The second concerns whether common evidence can show that each member suffered an injury proximately caused by an alleged breach of duty. Finally, the third concerns whether common questions exist as to Calfee's defense of waiver as it pertains to Sortino's claim that it breached a duty in negotiating the attorney fee provisions. Because the second issue is determinative, this analysis will begin and end there.

{¶ 83} Calfee argues that individualized evidence will be required to prove that each member suffered an injury proximately caused by Calfee's breach, whether under the claim for legal malpractice or the claim for breach of fiduciary duty. Complicating this analysis are the scattered theories regarding what injury the proposed class members suffered.

33.

{¶ 84} Sortino primarily asserts that he and his fellow class members suffered an injury through the deprivation of notice in the *Merrill* class action, which would have informed them of the procedure for filing a claim, the formula for calculating a distribution, the fact that they had a right to object, and that they would be bound by the terms of the settlement including the release of all claims against ODNR. Alternatively, he argues that he and the class were injured through receiving unfavorable terms in the settlement agreement, including the release of all claims against ODNR, the attorney fees negotiated for Calfee, and the reimbursement of already-paid attorney fees to some of the named plaintiffs. The trial court added a third potential injury for the loss of the right to be compensated for an unconstitutional taking. No matter the theory articulated by Sortino or determined by the trial court, however, Sortino cannot show with common evidence that each individual class member suffered an injury proximately caused by Calfee's breach.

{¶ 85} "Plaintiffs in class-action suits must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions." *Felix v. Ganley Chevrolet, Inc.*, 2015-Ohio-3430, ¶ 33, citing *In re Rail Freight Fuel Surcharge Antitrust Litigation—MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013). "If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class member), there is no showing of predominance under Civ.R. 23(b)(3)." *Id.* at ¶ 35.

{¶ 86} In *Felix*, the trial court certified a class comprised of individuals who purchased a car from the defendants and signed a purchase agreement that included an

34.

unconscionable arbitration provision. *Id.* at ¶ 17. The trial court determined that the Ohio Consumer Sales Practices Act permitted a class-wide award of damages for the defendants' conduct. *Id.* at ¶ 18. "Citing its 'discretion,' it awarded $200 per transaction to each class member." *Id.* On appeal, the Ohio Supreme Court determined that "[t]he trial court's holding that it could award $200 to each member of the class as a matter of the trial court's discretion is based on a fiction." *Id.* at ¶ 38. It emphasized, "There is no authority in the statutory scheme or in our precedent to support a damages award to a class member in class-action litigation arising from the OCSPA absent a showing that the class member was injured and sustained damages as a result of the defendant's conduct." *Id.* In reversing the trial court's class certification, the Ohio Supreme Court reasoned,

> Here, the class, as certified, fails because there is no showing that all class members suffered an injury in fact. The broadly defined class encompasses consumers who purchased a vehicle at Ganley through a purchase contract that contained the unconscionable arbitration provision. But there is absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages.

*Id.* at ¶ 37. It concluded that the trial court abused its discretion and the certified class was inconsistent with Civ.R. 23 "[b]ecause the class certified in this case includes plaintiffs whose damages are, at best, inchoate." *Id.* at ¶ 41.

{¶ 87} Likewise, in *Hoang v. E\*Trade Group, Inc.*, 2003-Ohio-301, ¶ 28 (8th Dist.), the Eighth District reversed the trial court's class certification as an abuse of discretion. In that case, the purported class was comprised of Ohio customers of the online brokerage firm E\*Trade who had accounts during periods of intermittent service disruptions between November 1998 and October 2000. *Id.* at ¶ 9. The Eighth District

35.

recognized that in addition to the E*Trade customers who were trading and suffered losses as a result of the system interruptions, other potential class members were trading but did not suffer losses during the system interruptions because the buy or sell prices during those times would have been less favorable, and still others were not trading at all during the system interruptions. *Id.* at ¶ 24. It noted that "[t]he trading of customers who were affected by the system interruptions would have to be analyzed on a 'trade by trade' basis to determine what price the customer might have obtained had the system interruption not occurred." *Id.* Given this, the Eighth District concluded that "because the issues relating to liability with respect to each individual plaintiff's claims make it impossible to prove or disprove the claims of all the members of the class on a simultaneous, classwide basis, class certification is inappropriate." *Id.* at ¶ 28. Alternatively, Hoang took the position that all E*Trade customers were injured simply because they could not access their accounts during the system interruptions, even if they were not trading at those times. *Id.* at ¶ 27. In rejecting this argument, the Eighth District reasoned that "simple loss of services without economic loss does not create a compensable claim," recognizing that "the law does not provide a recovery for inchoate claims." *Id.* at ¶ 27.

{¶ 88} This court also addressed the issue in *Estate of Mikulski v. Toledo Edison Co.*, 2021-Ohio-361 (6th Dist.), where the plaintiff sought to certify a subclass of Toledo Edison shareholders who allegedly received distributions marked as dividends when they should have been marked as return of capital. *Id.* at ¶ 4. The plaintiff asserted that the difference impacted tax filings and led to the overpayment of taxes. On appeal, this court

36.

reversed the trial court's certification of the subclass as an abuse of discretion, reasoning that there was no common evidence that would show that all subclass members suffered an injury caused by Toledo Edison, but rather the state and federal tax returns of each subclass member would have to be individually scrutinized to make that determination. *Id.* at ¶ 44, 46.

{¶ 89} This case presents a similar scenario. Sortino alleges that Calfee breached its duty to the proposed class members during its representation of them in the underlying *Merrill* litigation. To demonstrate injury, Sortino must show that the proposed class members are in a worse position than they otherwise would have been but for Calfee's conduct. To meet the predominance requirement under Civ.R. 23(B)(3), he must further show that the injury to each class member can be proven with common evidence. He cannot do so.

{¶ 90} In class action litigation, many class members do not participate, whether by submitting a claim, objecting to the settlement, or opting out of the litigation. Indeed, Calfee asserts that over 2,000 *Merrill* class members who were sent direct notice did not participate. Those members who did not participate are in functionally the same position as they were before the *Merrill* litigation, except now they have the benefit of an injunction prohibiting ODNR from taking an enforcement action against them relative to the property rights landward of the natural shoreline, but at the expense of forfeiting their right to be compensated for an unconstitutional taking. The loss of the right to compensation is the injury recognized by the trial court.  That injury, however, is theoretical—or "inchoate" as described in *Felix* and *Hoang*—unless the class members

37.

prove that they would have pursued the relief, either through a mandamus action or through participation in the *Merrill* settlement. This proof is necessarily individualized to each class member.

{¶ 91} The same is true for Sortino's theories of injury. Whether the injury is the alleged deprivation of notice or whether it is being subject to a suboptimal settlement agreement, for the injury to be anything more than theoretical the proposed class members must show that they have been negatively affected. This can only be demonstrated by proof that the class members would have participated in the *Merrill* litigation, either by opting out and pursuing mandamus relief, objecting to the settlement agreement, or filing a claim. For example, if it is true that Calfee breached its duty by failing to negotiate significantly more money for the settlement class, by failing to reduce its attorney fees, or by failing to advocate for direct notice, a proposed class member that would not have participated in the litigation still would not have received any of that benefit, and thus would be in the exact same position as if the breach had not occurred.

{¶ 92} Although unacknowledged by Sortino and the majority, *Felix*, *Hoang*, and *Mikulski* all recognize that a trial court abuses its discretion in certifying a class where there is no common evidence demonstrating that the class members were injured in fact. Here, Sortino may or may not be able to prove that many of his proposed class members would have participated in the *Merrill* litigation and thus were proximately injured by Calfee's alleged conduct. Nonetheless, such proof must be individualized to each class member to show what he or she would have done.

38.

{¶ 93} Therefore, Sortino cannot meet the predominance requirement under Civ.R. 23(B)(3) for his broadly-defined, proposed class of 15,000 property owners who were not sent individualized notice, did not file a claim, and did not receive monetary compensation.  Accordingly, consistent with *Felix*, *Hoang*, and *Mikulski*, I would hold that the trial court abused its discretion when it granted Sortino's motion for class certification.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.